PEARSOL et al. v. MAXWELL et al.

(Circuit Court, W. D. Pennsylvania. March 2, 1895.)

No. 1.

CONSTRUCTION OF WILL—ESTATES TAIL—BARRING REMAINDER.

A testator devised land to E., "to have and to hold the same to the said E. and the heirs of her body, provided, however, that the children of the said E. do not marry or be given in marriage to any of the children of my uncle J., or to any of his grandchildren, or great-grandchildren, or other lineal descendants of the said J.; but should any of the children of the said E. marry any of the descendants of the said J., the share of my estate of he, she, or they so marrying as aforesaid shall go to and become vested in the other child or children of the said E., share and share alike"; and the testator charged, E. with the payment of a legacy of $2,000: *Held*, that E. took an estate tail, which became converted into a fee simple absolute by her deed executed agreeably to the Pennsylvania statute for the barring of estates tail.

This was an action of ejectment brought by William S. Pearsol and others against George C. Maxwell and others. In pursuance of a written stipulation, the case was tried by court without the intervention of a jury. The following facts were found by the court:

(1) This action of ejectment is for the recovery of the undivided one-half part of a tract of land situate in Luzerne township, Fayette county, Pennsylvania. (2) The plaintiffs and the defendants respectively claim title to said land under the will of Samuel N. Crawford, who died in the year 1853, seised in fee of said land, having first made his last will, dated May 15, 1852, which will was duly probated after his death, namely, on July 13, 1853, and is recorded in said county of Fayette in Will Book No. 3, page 86. Said will contains the following clauses: "Item. I give and devise to my cousin Edith Pearsol, daughter of Benjamin Sharpless, all that portion of the farm upon which I now reside, and bounded and described as follows, viz.: Beginning on the Monongahela river where my lands adjoin those of Joseph Crawford's and said river; thence north 74°, west 30 perches; south 83°, east 75 perches, to lands of William Crawford; thence south 14°, east 207 perches; thence north 89¾°, east 134 perches, to a post; thence along the lands of Joseph Crawford north ¼°, west 205 perches, to the place of beginning, on the Monongahela river aforesaid,—to have and to hold the same to the said Edith Pearsol and the heirs of her body, provided, however, that the children of the said Edith Pearsol do not marry or be given in marriage to any of the children of my uncle Joseph Crawford, or to any of his grandchildren or great-grandchildren, or to any other lineal descendant of the said Joseph Crawford; but should any of the children of the said Edith Pearsol marry any of the descendants of the said Joseph Crawford, the share of my estate of he, she, or they so marrying as aforesaid shall go to and become vested in the other child or children of the said Edith, share and share alike. The part of my farm above devised to Edith Pearsol contains one hundred and seventy-five acres by a survey thereof made by James Moffit. It is my will and desire and I do hereby bequeath to the said Edith Pearsol all my household and kitchen furniture, and that she shall pay to my cousin Benjamin W. Crawford, Sr., the sum of two thousand dollars within five years after my decease, without interest on the same." Said will (proof) is made part of this finding. (3) By deed dated June 10, 1858, William Pearsol and Edith, his wife (the above-named devisee), conveyed the said tract of land to Christopher Cox, his heirs and assigns; the said grantors declaring in said deed that it was their intention by said deed forever to debar any estate tail in possession, reversion, or remainder, which the said Edith had in the said land, which deed was executed, acknowledged, and recorded agreeably to the provisions of the act of assembly of January 16, 1799, for the barring of estates tail. (4) The defendants (or some of them) have succeeded to and are invested with the

title of Christopher Cox by virtue of sundry deeds recited in their abstract of title (prout). (5) Edith Pearsol died in April, 1893. Her husband died previously. (6) The land which is described in the writ of ejectment is the same devised in and by the above-quoted provisions of the will of Samuel N. Crawford. (7) The plaintiff William S. Pearsol is a son of Edith Pearsol, and the other plaintiffs are her grandchildren, being children of deceased children of Edith. If entitled to recover at all in this action, the plaintiffs would be entitled to recover the undivided one-half part of said land. (8) At the date of the will of Samuel N. Crawford and at the time of his death, seven children—three sons and four daughters—of Edith Pearsol were living. There were none after born. (9) None of the children of Edith Pearsol married in violation of the above-quoted provisions of the will of Samuel N. Crawford.

Edward Campbell and J. R. Ritchey, for plaintiffs.
Shiras & Dickey and W. G. Guiler, for defendants.

ACHESON, Circuit Judge. This case turns upon the question as to what estate Edith Pearsol took, under the will of Samuel N. Crawford, in the land in controversy. The plaintiffs maintain that the devise to Edith was for her life only, and that the remainder in fee was devised to her children. Obviously, however, this will contains no express devise to Edith's children. If they took anything, it was inferentially, and not by the positive terms which the testator employed to declare his intention. His disposing language is: "I give and devise to my cousin Edith Pearsol * * * all that portion of the farm upon which I now reside, * * * to have and to hold the same to the said Edith Pearsol and the heirs of her body." These are the aptest words for the creation of an estate tail. Standing alone, they would admit of no other interpretation. When, after the devise of the land to Edith, the testator subjoined the words, "to have and to hold the same to the said Edith Pearsol and the heirs of her body," it is difficult to conceive how he could have had in view any other purpose than thereby to define the quantum of estate which she was to take. What ground is there for holding that the words "heirs of her body" were used by him in the sense of children? The presumption, of course, is that the words were employed in their technical meaning. Ihrie's Estate, 162 Pa. St. 369, 29 Atl. 750. Now, "heirs of the body" are strictly and technically words of limitation. "Nothing can convert them into words of purchase but a clearly-expressed intention of the testator to use them in an abnormal sense." Linn v. Alexander, 59 Pa. St. 43, 46. Speaking of technical words used in wills, the supreme court of Pennsylvania, in Stone v. McMullen, 10 Wkly. Notes Cas. 541, 543, declared that the cases "show that the intent not to use the words in their legal sense must be unequivocal, and so plain that no one can misunderstand it." Certainly, no such clear intent is here discernible. It is to be noted that there are no words whatever in this will to restrict Edith's estate to her lifetime. Had that really been the intention of the testator, he surely would have so expressed himself. He knew very well how to do this; for, making provision in favor of Sarah Wellington, he provided that "she is to have a life estate in the first room in my mansion." Again, the fact that the testator imposed on Edith the payment of $2,000 to Benjamin W. Crawford, Sr., raises a presumption that the testator intended to give her an

estate greater than for her life. Lobach's Case, 6 Watts, 167, 171; Coane v. Parmentier, 10 Pa. St. 72. Moreover, the rule is to regard the first taker as the preferred object of the testator's bounty, and in doubtful cases the gift is to be construed so as to make it as effectual to him or her as possible. Wilson v. McKeehan, 53 Pa. St. 79. Still further, the language of the testator—"The part of my farm above devised to Edith Pearsol contains one hundred and seventy-five acres"—is very significant. It clearly evinces that in the mind of the testator Edith was his sole devisee of this land. This, indeed, she was, by the disposing words of the will. The succeeding provision touching the marriage of Edith's children is awkwardly expressed, and somewhat confusing. It does not, however, I think, import an intention to cut down the inheritable estate devised to Edith. If regarded otherwise than as a provision in terrorem, its purpose, it would seem, was to ingraft on the estate tail a condition or contingency subject to which it should descend from Edith. It does not militate against this view that the testator's language may, perhaps, indicate ignorance as to how an estate tail descends. This construction reconciles all the provisions of the will, and is consonant with the rules of law. An estate tail may depend for its continuance on the performance of a condition, or may be defeated by the happening of a contingency. The tenant in tail, however, may at any time before the happening of the contingency or breach of the condition bar the entail, in the manner provided by law, and thereby he defeats every contingent interest, and his estate becomes a fee simple absolute, free from all conditions and limitations. This was the effect of the deed to bar the entail executed by Edith Pearsol and her husband to Christopher Cox on June 10, 1858. The present case is closely analogous to that of Linn v. Alexander, supra, and the rulings of the supreme court in that case fully sustain the conclusion here reached, that the estate devised to Edith Pearsol was an estate tail, which was converted into a fee simple absolute by the deed to Christopher Cox. The court, therefore, finds in favor of the defendants, and it is ordered that judgment be entered in their favor.