*Kinney, Ballou & McClanahan,* for the respondent.

---

NINIA (w.), PIIKOI and LUUKIA (his wife), KAHANA and KAHALE (her husband), MELE and SAM HOOKA-NO (her husband), KUKALIA (w.) and KAMAOLI *vs.* ELIZABETH K. WILDER.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 4, 1898.          DECIDED JULY 28, 1899.

WHITING, J., L. A. THURSTON, ESQ., OF THE BAR, IN PLACE OF JUDD, C.J., DISQUALIFIED, AND A. S. HUMPHREYS, ESQ., OF THE BAR, IN PLACE OF FREAR, J., ABSENT.

A testator devised certain lands to his wife, sons, daughters and grandchildren, concluding the devise with the following language: "The above enumerated property is for them all and their heirs and representatives forever." By a subsequent clause in the will, it is provided that, "if one of them should die, his or her share shall not go

to his or her husband or wife, but if he or she shall leave children, then his or her share shall go to such child or children, and any of them who shall have no children, his or her share shall go to those remaining without any division of his or her share."

Held: Under the first clause the devisees take a fee simple absolute, which was by the subsequent clause cut down to a fee simple, defeasible on the death of the respective devisees, without leaving a child or children, in which event the property vests in the survivor or survivors by way of executory devise.

The expression "if one of them should die" has reference not to the death of the devisees in the lifetime of the testator, but to death at any time. The enjoyment of the estate by those ultimately entitled being postponed to a future day by a supervening estate, it is but just to make the chances of survivorship applicable to such future day.

The preamble, or proem, of a will may be considered in construing the instrument, and, in doubtful cases, it may control.

A deed from the owners of the contingent fee, together with a release from the executory devisees, will convey a good and sufficient title; and an agreement for the sale of land entered into between the owners of a contingent fee and the executory devisees with a second party will be specifically enforced against such second party.

OPINION OF THE COURT BY A. S. HUMPHREYS, ESQ.

One Okuu, being seized and possessed as of his own demesne in fee of the real estate herein involved, died testate.

In item one of his will, the testator, after providing for the payment of his debts and funeral expenses, devised certain real estate situated at Waikiki, Honolulu, and bequeathed certain personal property, to Aliiloa, his wife, Ninia, Piikoi, Kahana, Mary and William Kuku, his children, and Kukalia and Kamaoli, his grand-children. This devise and bequest is concluded as follows: "The above enumerated property is for them all and their heirs and representatives forever."

In item two of the will, the testator appoints his beloved daughter Ninia as administratrix (lunahooponopono) of the above enumerated property and makua óver his children, grandchildren and wife, directing her to collect the money from the

lands that are leased and to give each one their proper share as directed in his will. And further authorizes her to sell the personal property enumerated in his will, if she is unable to take care of or manage the same, and further empowers her to lease the land without hindrance, but forbids her to make any conveyance or deed.

Item three provides that after the death of Ninia the management of the property shall go to one of the above mentioned persons.

Item four is in the following language: "If one of them should die, his or her share shall not go to his or her husband or wife, but if he or she shall leave children, then his or her share shall go to such child or children; and any of them who shall have no children, his or her share shall go to those remaining without any division of his or her share."

All of the devisees and legatees survived the testator, but since his death Aliiloa, his wife, and William Kuku, his son, have deceased; the latter having died under age, unmarried and without issue. Of the other four children mentioned in the will, Ninia has married and has a child Kukalia, mentioned in said will, who in turn has two children, now minors; Piikoi is married and has two children, one of whom is a minor; Kahana is married and has two children, both minors; Mary is married and has five children, all minors.

On the 12th of November, 1897, the surviving devisees, to wit: Ninia, Piikoi, Kahana, Mary and Kukalia and Kamaoli with their spouses, respectively, entered into an agreement with the defendant whereby the defendant agreed to purchase and said devisees to sell, forthwith, for the sum of seven thousand dollars, the real estate devised in item one of said will; the devisees agreeing "to give a good and sufficient title." The defendant having declined to perform the agreement, this bill was filed against her for a specific performance thereof. The defendant in her answer admits the execution of the agreement and her refusal to perform the same, basing her refusal on the alleged inability of the complainants to give her a good and sufficient title. While

apparently hostile, the suit is in reality a friendly one, brought for the purpose of obtaining a construction of the will of Okuu.

The complainants contend that the first clause of the will devises the premises in question in fee simple to those therein mentioned, and that the fourth clause cannot have the effect of cutting down the fee simple to an estate for life merely; that the expression in said fourth clause "if one of them should die" has reference to the death of the devisees in the lifetime of the testator, and that said devisees having survived the testator, take an indefeasible estate of inheritance.

The defendant admits that the first clause, if construed alone, would vest a fee simple in the devisees, but argues that the fourth clause cuts down the fee simple to an estate for life with remainder to the children of the devisees, or, in default of children, to the survivor or survivors of the devisees. In other words, that these remainders are substitutes or alternatives, one for the other, the latter to take effect in case the prior one should fail to vest in interest. Technically, this would be called a limitation by way of remainder on a contingency with a double aspect.

*Watson vs. Smith,* 28 Am. St. Rep. 665; Hopkins on Real Property, p. 287; 2d Washburn on Real Property, p. 575 *et seq.*

The defendant further contends that the expression in the fourth clause of the will "if one of them should die" does not mean that the death is to happen in the testator's lifetime, but means death at any time, and that such being true the fee given in the first clause is necessarily cut down to a life estate.

The Circuit Court sustained defendant's contention, using the following language: "In construing the will, the intention of the testator has been frequently called the polar star to guide courts, and this intention is to be gathered from the whole will. If possible, the will is to be construed so as to make all its parts harmonize. I believe that the intention of the testator was to give a life estate to the devisees named, their respective children, upon the death of any one of them taking as purchasers. In the instructions to Ninia, it was the intention of the testator that the devisees should merely receive the income of the estate and the

power of absolute disposition of the property was withheld. This construction necessitates the elimination from the will of the words "heirs and representatives forever," but if that is necessary to effectuate the intention of the testator, it should be done. * * * * * * I hold, therefore, that the complainants were not vested with a fee simple in the estate, and that they are unable to convey to the defendant a good and sufficient title and are not accordingly entitled to a decree of specific performance."

In every question arising on the construction of a will, it is alike dictated by justice, common sense and the rules of law, that the first inquiry shall be, what was the true intention of the testator—*what is his will?* And if that can be satisfactorily discovered, the next is, can such intention be carried into effect consistently with the rules of law? The presumption is that every testator means just what he says; that his words are the signs of his will and that he desires it executed as he has expressed it without the elimination of any provision thereof, or the addition of any provision thereto.

In the first clause of this will, the testator devises his property to the persons therein named and "their heirs and representatives forever." These are apt and proper words for the conveyance of the estate in fee and the intention to give the fee could not have been more adequately expressed if every word in the English language had been employed. Under the rules of law, this devise must be recognized as a fee simple, and the plain intention of the testator executed; but it is not necessary to constitute a fee simple, that it should be absolute. It may be a fee simple, defeasible or determinable upon the happening or not happening of some future event. In order to hold that the devisees in this case have a simple life estate, we should be compelled to strike out the clause devising the property in question to them, the potent words "their heirs and representatives forever." If these words are to remain in the will, and the necessities of the case do not coerce their elimination, it results from the very nature of things that the contention of defendant must fail. If by that clause complainants take an estate in fee simple, even though qualified, what

remnant can there be, the whole having been disposed of? That a remainder cannot be limited after a fee simple, is a proposition which is susceptible of mathematical demonstration, and it is equally as true of a fee qualified, as of a fee absolute.

2 Blackstone Com. 164; 2 Thomas Coke, Litt. 126 & n. (B) *idem* 505 & n. (W); 2 Minor's Inst. 371; 1 Fearne's Remainders, 12.

It is possible, however, even at common law, to limit two concurrent fees by way of remainder as substitutes or alternatives, one for the other, the latter to take effect in case the prior one should fail to vest in interest; although if the first does vest in interest, the subsequent limitation is immediately avoided. Thus, in case of a grant to A for life, remainder to Z and his heirs, and in case Z should die, living A then to W and his heirs, the remainder in fee to W is to take the place of the remainder limited to Z in fee, in the contingency that A survives Z. But, in the opposite contingency, of Z's surviving A, Z's fee simple remainder becomes vested in interest and cannot be divested by any contrivances known to the common law so as to let in a subsequent remainder. Such a limitation as the one above stated, is called a limitation on a contingency in a double aspect, and sometimes a remainder on a double contingency.

*Luddington vs. Kime,* 1st Lord Raymond 203; *Doe vs. Bersall,* 6 T. R. 30; *Doe vs. Fonncrceau,* 2nd Doug. 505, note; 2 Minor's Inst. 371; 2 Wash., Real Property, 576.

But it will be noted that in all the cases where two concurrent fees were limited by way of remainder as substitutes or alternatives, the first taker was given a mere estate for life. The case most frequently cited as illustrative of this proposition is that of *Luddington vs. Kime, supra.* In that case the devise was to A for life; and if he had male issue, then to such issue and his heirs; but if A died without issue male, then to T B in fee. Here were two remainders contingent in their character and both in fee dependent upon the same particular estate, and to take effect, if at all, upon the determination of that estate; and only one of these could take effect. If A had male issue, the remainder vested at

once in such issue and defeated the limitation to T B altogether. On the other hand, if A died without male issue, T B's remainder at once vested in him, and took effect as a substitute for the other; neither was it by its terms to wait until the other should have once taken effect, and afterwards been determined.

2 Wash. on Real Property, *supra.*

We have seen that by the first clause of this will, the devisees take an estate in fee simple. By the fourth clause, this estate is rendered determinable on the contingency of their dying without leaving a child or children, and on that contingency vesting in *"those remaining"* (which we construe to mean the surviving devisees) by way of executory devise. We are not unmindful of the rule announced by all of the authorities, that where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise. This rule, however, has never been construed either in England or in this country to include cases where the title of the first taker is, (as in this case) a fee simple determinable on the happening of a contingency, and the contingency is definite.

*Abbot et ux. vs. Essex Co.,* 16 How. 202.

By construing this will to invest a fee simple estate in the devisees, defeasible on the contingency of their death without leaving a child or children, and, on that contingency, vesting in the survivor or survivors by way of executory devise, we give full force to the testator's declarations contained in the first clause, that it is "for their heirs and representatives forever," and execute what we believe to be his manifest intention upon a construction of the whole will, without emendation.

The famous case of *Pelles vs. Brown,* Cro. Jac. 590, decided nearly three centuries ago, was not essentially different in its facts from the case at bar. It has been called the Magna Charta in relation to the principles which it settled, and it is said, has been cited almost as frequently as executory devisees have come before the court, and always with probation. In that case, William Brown devised lands to Thomas Brown, his second son, and

his heirs forever; and if Thomas died without issue, living William, his brother, that then William, his brother should have those lands, to him and his heirs and assigns forever. All the judges agreed that this was a good limitation of the fee to William upon that contingency; not by way of immediate remainder, for they all agreed that it could not be by remainder. As if one devises land to A and his heirs, and, if he died without issue, that it should remain to another, it was void and repugnant to the estate; for one fee could not be in remainder after another; for the law doth not expect the determination of the fee by his dying without heir, and, therefore, cannot appoint a remainder to begin by determination thereof. But by way of contingency, or of executory devise to another, to determine the one estate and limit it to another upon an act to be performed or on failure of performance thereof, for the one might be, and always had been allowed.

The next case in point of time is that of *Hanburry vs. Cockerill*, 1st Roll., Ab., 835. In that case, A, having two sons B and C, by several venters, and being seized of Blackacre and Whiteacre, devised Blackacre in fee to B, and Whiteacre to C in fee, with a proviso that, if it should please God either of his said sons to die before such time as they should be married, or before they should attain their age of 21 years, and without issue of their bodies to be begotten, then he gave all the said lands which he gave by his will, unto such of his sons as should so decease before his marriage, or before their age of 21 years, and without issue of their bodies, unto the survivor of his sons. The devise over in this case was held good as an executory devise.

The next case is that of *Heath vs. Heath*, 1 Bro. R. 147. Edward Heath devised to his son William Heath all his estate until Edward should attain his age of 22 years and no longer. He afterwards said: "Item—I give and bequeath to Edward Heath all my messuages in H and C forever; that is, if he have a son or sons who shall attain 21. But if my kinsman, Edward Heath, should chance to die without son or sons to inherit, my will is that the son of my son William Heath shall inherit." It was de-

termined by Lord Thurlow, that Edward Heath took an estate in fee, subject to an executory devise over in the event of his dying without issue, or of his dying under the age of 21 years.

Another case is *Doe vs. Wetton*, 2d Brs. & Pull. 324. In that case, a person devised a copyhold estate to his daughter Susan Sanders and her heirs and assigns forever; but if his said daughter should happen to die leaving no child or children, or lawful issue of her body, living at the time of her death, then he gave, devised and bequeathed all the said copyhold premises to T B and his heirs. Lord Eldon and the other judges of the court of Common Pleas held, that the whole having been given to Susan Saunders, her heirs and assigns, no further remainder over could be limited upon that fee, and, therefore, the estate given to T B was a new fee limited upon a contingency, that is, an executory devise. These cases, with many others, are collected in 4th Cruise on Real Property, Title "Devise," Chapter XVII.

Chancellor Kent said that in Lord Thurlow's time there were fifty-seven English cases on this subject; and it is hardly necessary to observe that the number has been greatly augmented since that time.

For cases very similar to this case, in which it was held that the devisees took a fee simple, determinable on the contingency of death without issue, and on that contingency vesting in the survivor or survivors by way of executory devise:

See *Richardson vs. Noyes*, 2 Mass. 56; *Brightman vs. Brightman*, 100 Idem 239; *Schmaunz vs. Goss*, 132 Idem 14; *Morris vs. Potter*, 10 R. I. 69; *Abbott et ux. vs. Essex Co.*, 18 How. 202; *Williams vs. Lewis*, 100 N. Car. 142; s. c. 6 Am. St. Rep. 574; *Hall vs. Chaffee*, 14 N. H. 215; *Darling vs. Wherrin*, 19 Idem 9; *Sims vs. Conger*, 39 Miss. 231; *Wallington vs. Taylor*, 1 N. J. Eq. 314; *Wilson vs. Wilson*, 43 Idem 29; *Brooks vs. Kip*, 54 Idem 462; *Daniels vs. Daniels*, 28 S. E. Rep. Ga. 167; *Whitworth vs. Stuckey*, 1 Rich. Eq. 404; *Hay vs. Hay*, 3 Idem 390; *Hull vs. Hull*, 2 Strob. Eq. 190; *Barnitz vs. Casey*, 7 Cranch 456; *Jones vs. Miller*, 13 Ind. 337; *Smith vs. Hunter*,

23 Ind. 580; *Heard vs. Horton*, 1 Denio 165; *Fosdick vs. Cornell*, 1 John. 440; s. c. 3 Am. Dec. 340.

In reference to the last case cited, it is fair to say that in *Anderson vs. Jackson*, 16 Johns. 382, the subject underwent an elaborate examination in the court of errors and the authority of the principal case was affirmed by a majority of the court; but the minority, with which Chancellor Kent threw his powerful and distinguished influence, denied its authority. Referring to the case of *Fosdick vs. Cornell*, he says: "I was at the time Chief Justice of the Supreme Court, and although I did not write the opinion, I will not shelter myself under that silence. I am free to say that I partook of its error. But I should be unworthy of public confidence, if, with more experience and more examination, having detected myself in error, I should now be ashamed to confess it. I discovered years ago, that the case of *Fosdick vs. Cornell*, was decided upon mistaken grounds. The court, however, in this, apologize for themselves, that without much examination and without looking as they should have done deeply into the subject, they were led astray out of the beaten track by such a distinguished leader as Lord Kenyon." Notwithstanding what is here said in disparagement of it, the case of *Fosdick vs. Cornell* has received the highest endorsement, both in the Federal and New York courts. In *Jackson vs. Chew*, 12 Wheat. 163, Thompson, J., after reverting to what was said by Chancellor Kent in *Anderson vs. Jackson, supra,* says: "If this should be admitted (which I certainly do not mean to admit) it is an error which has been repeatedly sanctioned by all the courts of that state for the last twenty years and it has ripened into a settled rule of law." Its authority is affirmed in:

*Lippett vs. Hopkins*, 1 Gall. 460; *Chrystie vs. Phyfe*, 19 N. Y. 358; *Gillman vs. Reddington*, 24 N. Y. 16.

The case of *Garland vs. Watt*, 4 Iredell 287 (s. c. 42 Am. Dec. 120), is not wholly unlike the case at bar in its facts. In that case the testator had four unmarried children, two sons and two daughters. To his sons William and Rufus, the testator de-

vised as follows: "I give to my sons William Watt and Rufus Watt, the tract of land I purchased on Dan river to them and their heirs forever." In a subsequent part of the will the testator says: "I will that if any of my children die without issue, leaving a wife or husband, it is my will such wife or husband shall be entitled to one-half of the property, the other half to be equally divided between my other children or their heirs." It was held that under the first clause William and Rufus took an estate in fee simple which was by the subsequent clause, above quoted, cut down to a fee conditional resting upon a contingency.

An executory limitation in order to be valid, must not transgress the rule against perpetuities. In order to be valid it shall be so limited that it must vest in interest, if at all, within a life or lives in being and the utmost period of gestation and 21 years thereafter. The period of gestation being allowed only in cases where gestation exists, it is apparent that this case is not within the rule against perpetuities. The fee simple conditional being given to the devisees with an executory limitation to the survivor or survivors in the event of their dying without leaving a child or children, it is equally clear to our minds, that the expression used by the testator in the fourth clause of the will, to wit: "If one of them should die" has reference not to the contingency of death in his lifetime, but that he intended to limit the time when the contingency should happen to the event of the death of the respective devisees without leaving a child or children, and to no earlier period, and that the estate should then go to the survivor or survivors. It is true, as a general rule, that wherever the gift takes effect in possession immediately upon the testator's death, words of survivorship refer to the date of his death and are intended to provide for the contingency of death of the objects of his bounty in his lifetime, unless some other point of time be indicated by the will. If, however, the enjoyment of the estate by those ultimately entitled is postponed to a future day by a supervening estate, it is natural and just to make the chances of survivorship applicable to such future day.

*Evans vs. Godbold,* 6 Rich. Eq. 26; *Schoppert vs. Gillam,*

Idem 83; *Swinton vs. Legare,* 2 McCord, Eq. 443; *Presley vs. Davis,* 7 Rich. Eq. 105; *Ballard vs. Connor,* 10 Rich. Eq. 389.

"The general rule is that when the context is silent the words referring to the death of the prior legatee in connection with some collateral event, apply to the contingency happening as well after as before the death of the testator."

2d Jarman on Wills, 1597.

Thus, in *Allen vs. Farthing,* cited in the 2d Jarman *supra,* where a testator, after directing that a sum of £200 recently paid to his daughter should be deducted from the amount of any moneys, or any share of his personal estate, thereinafter bequeathed to her, or to which she should be entitled under and by virtue of that his will, proceeded to devise all his real estate to trustees upon trust for sale, and to apply the moneys to arise therefrom upon the trusts thereinafter declared concerning his personal estate. The testator then bequeathed his personalty to the same persons, upon trust, to get in and recover the same, and to pay and divide the same moneys, estate and effects unto and between his son John Allen and his daughter Ann Smith, in equal moieties, share and share alike, the share of the daughter to be for her separate use, and, in case of the death of either of them, the said John Allen and Ann Smith leaving any child or children him or her surviving, upon trust that the said trustees should stand possessed of the said moiety of the said estate so given to him or her, the said J. Allen and A. Smith, as aforesaid, in trust for such child or children, as and when they should attain 21, and in the meantime to apply the income for maintenance; and in the case of the death of either of them, the said John Allen and Ann Smith, leaving no issue lawfully begotten, then upon trust, as to the moiety of him or her so dying, for the survivor of them. The son and daughter, having survived the testator, claimed absolute interests in the residue, contending that the several gifts in favor of the children and the survivor, respectively, were intended to provide only for the event of the legatee's dying in the testator's lifetime; and that the terms in which the testator had directed the £200 to be deducted out of his daugh-

ter's share, aided this construction. Sir J. Leach, V. C., however, held that the testator's children took life interests only. He observed that where a testator refers to death simply, the words are necessarily held to mean death in his (the testator's) lifetime, the language expressing a contingency, and death generally being not a contingent event (though even then slight circumstances would vary the construction); but in the present instance, it was not necessary to resort to such a construction, the event described being not death simply, but death leaving children, so that there was a clear contingency expressed, and nothing to prevent the words from having full scope.

*Sims vs. Conger, supra.*

Die at any time, is the natural meaning of the words "if one of them should die," without other words limiting death to a particular period.

*Hemen vs. Kamakaia*, 10 Haw. 547.

In *Williams vs. Lewis*, 100 N. Car. 142 (s. c. 6 Am. Rep. 547), the devise was very similar to the devise here, and the court said: "In our opinion, the time contemplated by the testratrix is the death of the respective tenants without an heir, that is, without children then living, and no earlier period. Taking the terms of the instrument as a guide to us in finding what the testatrix meant, and without superadding words that she does not use, it is to us manifest that the estate should remain in each devisee until his or her death, and then go over to the survivor, if no child or children are living by the deceased." The contention that the testator did not in this case have reference to the death of the devisees in his lifetime, is very much strengthened by his recital in the introductory clause of his will, that, he is "sick and feeble." It was argued at the bar that these words were not entitled to any force in the construction of the will. But we think they are. The testator was evidently a man of advanced years. At least we may so presume, from the provision which he makes in his will for grandchildren; and in the face of his declaration as to his physical condition, it is not probable that he contemplated the death of any of his devisees prior to his own death.

*Galloway vs. Carter,* 5 S. E. R. 4.

The preamble or introductory clause in a will, is often referred to as showing the intention of the testator. Like the preamble of a statute, it may very frequently furnish the key to the situation.

*Smith vs. Schriver,* 3 Wall. Jr., 219; *Richardson vs. Noyes,* 2 Mass. 56; *McIntyre vs. McIntyre,* 123 Pa. St. 329; s. c. 10 Am. St. Rep. 529.

Also the preamble frequently furnishes the source of interesting litigation.

See *Robnett vs. Ashlock,* 49 Mo. 171; *Damon vs. Damon,* 8 Allen, 192; *Fredericks' Appeal,* 52 Pa. St. 126; *Traver vs. Traver,* 9 Peters, 174; *Barton's Est.,* 52 Cal., 538.

Executory devises by the modern construction are capable of being devised by will, assigned or conveyed by deed, and of being transmitted by inheritance and succession to the devisees or grantees' heirs or personal representatives.

2 Minor's Inst. p. 433.

And while they cannot be barred by any act of the first taker, yet, the person entitled to the executory estate may bar his own claim by release to the first taker in possession and this would pass a perfect title by way of estoppel.

4 Cruise on Property, Title, Devise, Chapter XX, Sec. 50; 2 Wash. on Real Property, p. 700.

At common law the release could not have been made to a stranger under the rule of policy which prohibited the granting or assigning of remote and contingent rights to real estate in the same manner and for the same reason that the common law prohibited the assignment of choses in action, because such transfers were thought to promote litigation. "To prevent maintenance and the multiplying of contentions and suits, it was an established maxim of the common law that no possibility, right, title or any other thing that was not in possession or vested in right could be granted or assigned to strangers." (But. & Hat., Note 212 to Coke & Litt. 264, 266.)

But the same policy which prohibited the transfer of these contingent rights to strangers, tended to encourage their release to parties already possessed of some estate in the premises.  By such a merger of rights the sources of litigation were obviously diminished.   Accordingly, we find another annotator upon Coke & Littleton, saying:   "With respect to things that may be released, it is a rule of law, that no possibility, right, title or thing in action shall be granted or assigned to a stranger, on account of the danger of maintenance and of multiplying contentions and suits. But although a mere possibility cannot be released to a stranger, yet all rights, titles and actions may be released to the *terre tenant* for securing his repose and quiet, and for avoiding contentions and suits."   Thomas Coke, note F., p. 456; Litt. 446.

*Miller vs. Emans,* 19 N. Y. 384.

This rule of the common law, however, rendering void a conveyance by a disseisee to a stranger, is not in force here.

*Mossman vs. Haw. Gov.,* 10 Haw. 421.

A release by the owner of a contingent fee together with the executory devise would bar it and convey a good and sufficient title.   Note B. by Oliver Wendell Holmes, Jr., 4 Kent, Com., p. 267, 12th Ed.

*Wilson vs. Wilson,* 32 Barb. 328; *Miller vs. Emans, supra.* The last case overrules *Pellcreau vs. Jackson,* 11 Wend. 110, and, *Jackson vs. Waldron,* 13 Idem 178, and, *Edwards vs. Verrick,* 5 Denio 664.

In *Vreeland vs. Blauvelt,* 8 C. E. Greene, 483, where under a devise to A, B and C, and if any of them should die leaving no lawful issue, then to the survivors.   A and B conveyed and released the real estate so devised to C, by deed with full covenants, including a general warranty.   It was held that C had a good and indefeasible title thereto and that a contract for the purchase of such real estate would be specifically enforced.

In that case, the release was to one of the parties in possession having title.   But it matters not here, whether the release be to a party in possession or a stranger, having seen that in *Mossman*

*vs. Haw. Gov., supra,* the common law rule as to conveyances by one not in possession to one not in possession, is not in force in this jurisdiction.

It is true as stated in *Vreeland vs. Blauvelt, supra,* that a court of equity will not compel a purchaser to take a doubtful title. If there is such an uncertainey in the title as to affect its marketable value, even though the court might consider it good, still the contract may not be specifically enforced; but there must be some debatable ground on which the doubt can be justified.

In our opinion no such ground can be found in this case. The decree of the Circuit Court of the First Circuit is reversed, with instructions to enter a decree in consonance with the prayer of the bill, upon complainant's executing to defendant a deed with full covenants of warranty. As to the form of the deed, reference may be had to *Miller vs. Emans,* 19 N. Y., *supra.*

The parties have stipulated in writing that a decision may be rendered by Justice Whiting and A. S. Humphreys, Esq., in the absence of L. A. Thurston, Esq.

*A. W. Carter* for plaintiffs.

*Kinney, Ballou & McClanahan* for defendant.