# HELEN K. KINNEY *v.* OAHU SUGAR COMPANY, LIMITED.

## No. 1005.

### ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

### HON. W. L. WHITNEY, JUDGE.

ARGUED MAY 14, 15, 1917.                    DECIDED MAY 28, 1917.

### ROBERTSON, C.J., QUARLES AND COKE, JJ.

WILLS—*construction*—*technical words.*

> The technical meaning of words used in a will may be subordinated to the real intent of the testator, but the presumption is that technical words were used in their technical sense, and they will be so construed unless the context shows a clear intent to the contrary.

WORDS AND PHRASES—"heirs of the body."

    The phrase "heirs of the body" is the ordinary, proper and tech-
nically accurate one to use in the creation of an estate in fee tail.

SAME—"*limited*."

    The word "limited," when used with reference to the creation
of an estate in real property, means "defined."

ESTATES—*estate in fee tail—construction.*

    A testatrix devised land to K and K, her husband, "unto them
and to the heirs of the body of either" and "upon default of issue"
to trustees appointed by the will. Held, that the testatrix in-
tended to devise to K and K an estate in fee tail, and that, as
estates tail cannot exist in Hawaii, the devise took effect as an
estate in fee simple in K and K, it not appearing that a life estate
in K and K with remainder to the heirs of the body of either
would more nearly carry out the intention of the testatrix.

OPINION OF THE COURT BY ROBERTSON, C.J.

This is a writ of error to review the judgment of the
circuit court of the first circuit in an action of ejectment to
recover a tract of land situate at Hanohano, district of Ewa,
city and county of Honolulu. The case was tried jury
waived, and judgment was rendered in favor of the de-
fendant.

The plaintiff claimed title to an undivided one-third of
the land as one of the heirs of the bodies of Kahakuakoi and
Kealohapauole, devisees under the will of the late Bernice
Pauahi Bishop, and as heir of a deceased brother. There
was evidence that Kahakuakoi and Kealohapauole had three
children, Niulii, George and Lydia; that Niulii died in 1890,
leaving two children, Helen (the plaintiff) and John Paa-
lua; that Kahakuakoi and Kealohapauole died respectively
in 1910 and 1914; and that John Paalua died in 1915. It
further appeared that the land was mortgaged on December
15, 1890, by Kahakuakoi and Kealohapauole to Bishop &
Company, bankers, and was sold under foreclosure of the
mortgage on January 28, 1893. Through mesne conveyances

the defendant claims title under the foreclosure deed, and also by adverse possession. On October 22, 1894, Kahakuakoi, Kealohapauole and George and Lydia Kealohapauole executed a deed of all their right, title and interest in the land to the defendant's grantor for a nominal consideration. In the trial court the two principal questions were, one of fact, whether the plaintiff had proven her alleged heirship, which, upon conflicting testimony, was decided in her favor, and one of law, whether she took any estate in the land under the provisions of the will, which was decided against her. This court has only to deal with the question of law. The case has been thoroughly and elaborately briefed and ably argued, but much of the discussion has been of an academic nature and seems not to require attention in all its many phases.

The testatrix died October 16, 1884. In the fifth paragraph of her will she said "I give and bequeath unto Kahakuakoi (w) and Kealohapauole, her husband, and to the survivor of them, the sum of Thirty Dollars ($30) per month, (not $30 each) so long as either of them may live. And I also devise unto them and to the heirs of the body of either, the lot of land called 'Mauna Kamala,' situated at Kapalama, Honolulu; upon default of issue the same to go to my trustees upon the trusts below expressed." The clause was modified in the eleventh paragraph of the first codicil to the will, as follows: "I revoke so much of my said will as devises the land known as 'Mauna Kamala' to Kahakuakoi (w) and Kealohapauole her husband; and in lieu thereof I give, devise and bequeath unto said Kahakuakoi (w) and Kealohapauole (k) all of that tract of land known as Hanohano, situated at Ewa, Island of Oahu, formerly the property of Puhalahua; to have and to hold as limited in said fifth article of my said will."

On behalf of the plaintiff in error (also plaintiff below) it is contended (1) that at common law the devise would

not create a fee tail general or a fee tail at all in Kahakuakoi and Kealohapauole, but contingent remainders in the heirs of the body of either vesting at death, and in default of heirs of the body of either, then to the trustees; (2) that in Hawaii, even if the devise created a fee tail at common law, this is to be construed as a fee simple, or an estate for life with remainder over, according as such construction will carry out more nearly the intent of the testator drawn from the will and the surrounding circumstances; (3) that the cases of *Nahaolelua* v. *Heen,* 20 Haw. 372, and *Boeynaems* v. *Ah Leong,* 21 Haw. 699, settle the law in Hawaii, that even if a devise or a deed creates at common law a fee tail, if it appears that the testator or the grantor had in mind some benefit for the heirs of the body, the devise or grant will be construed as a life estate in the first taker and remainder over; (4) that the use of the words "of either" and the devise over in default of issue, meaning heirs of the body of either, show that, in the mind of the testatrix, the heirs of the body of either were to take an interest, as they cannot take by descent, they must take by purchase, which would require under the decision in the *Nahaolelua* case, a holding that the estate created by this will is a life estate by the entirety with remainder over to the heirs of the body of either; (5) that it will be presumed that the testatrix intended to create a legal estate, rather than an illegal one—a devise for the life of the first takers, rather than a fee tail which cannot exist in this Territory; and (6) that the construction contended for is reenforced by the use of the word "limited" in the codicil, especially if the devise to the first takers creates a fee simple, for then the devise over is a conditional estate dependent on the defeasance of the fee simple already given.

On behalf of the defendant in error it is contended (1) that the words "heirs of the body of either" are words of inheritance and not of purchase, and the estate would be

a fee tail at common law, and also in Hawaii, if fees tail could exist here; (2) that where, as in this Territory, fees tail do not exist, a fee tail, in the absence of controlling words to the contrary, would be a fee simple; (3) that it was the intention of the testatrix to create an estate of inheritance, and not a life estate and remainders; (4) that the word "either," the gift over "upon default of issue," the will and codicils taken as a whole, and legal presumptions, all tend to support that view; and (5) that the intention of the testatrix can better be met by a holding that Kahakuakoi and Kealohapauole took title in fee simple, than that they took for life only. The claim of title by adverse possession, and the contention that the defendant has at least the right of possession for a term of years under a lease made by Kahakuakoi and Kealohapauole for fifty years from January 1, 1892, under the view we take of the case, need not be considered.

The will and codicils were drawn with much care and accuracy of expression. It appears from the record in the proceeding for the probate of the will which is in evidence in this case that they were drafted by Francis M. Hatch, at one time a justice of this court, but the language used must, of course, be regarded as that of the testatrix herself. It is obvious that the testatrix knew how to express an intention to create a life estate and remainder, as well as to devise in fee simple. Thus, in the fourth paragraph of the will, there was a devise of land to L, "to have and to hold for and during the term of her natural life; and after her decease to my trustees upon the trusts below expressed." There were a number of such life estates given by the will and codicils. In the ninth paragraph of the first codicil there was a devise of land and a fishery to D, "to have and to hold with the appurtenances to him, his heirs and assigns forever." In the fifth paragraph of the first codicil there was a devise of land to K and H, his wife, "to have and to hold

for and during the terms of their natural lives and that of the survivor of them; remainder to my trustees upon the trusts named in my said will." It would seem, then, that in devising the land in dispute to Kahakuakoi and her husband "unto them and to the heirs of the body of either," and "upon default of issue" to the trustees,, the testatrix intended to create an estate other than a fee simple, or a life estate or estates and remainders. What was it? No authority exactly in point has been found.

The word "heirs," though it may be and sometimes is used as a word of purchase, is primarily, ordinarily, and in a strict technical sense, a word of limitation denoting an estate in fee simple. 40 Cyc. 1574; 2 Jarman on Wills (6th ed.) 69; *Thurston* v. *Allen,* 8 Haw. 392, 402; *Ninia* v. *Wilder,* 12 Haw. 104, 108; *Iuko* v. *Holt,* 9 Haw. 88, 91. And, at common law, after the enactment of the statute *de donis conditionalibus* in 1285, the phrase "heirs of the body" was the ordinary, proper and technically accurate one to use in the creation of an estate in fee tail. 2 Jarman, *supra;* *Rooke* v. *Queen's Hospital,* 12 Haw. 375, 390; *Nahaolelua* v. *Heen, supra,* at p. 376. In *Pearsol* v. *Maxwell,* 68 Fed. 513, where there was involved a devise to one and "the heirs of her body," and a contention was advanced for a life estate and remainder, the court said, "These are the aptest words for the creation of an estate tail. Standing alone, they would admit of no other interpretation." And that they "are strictly and technically words of limitation." And in the same case on appeal the court said, "that these words, if alone considered, created an estate tail, is hornbook law." 76 Fed. 428. The technical meaning of words used in a will may be subordinated to the real intent of the testator, but the presumption is that technical words were used in their technical sense, and they will be so construed unless the context shows a· clear intent to the contrary. 40 Cyc. 1398; *Land Co.* v. *Barker,* 60 So. (Ala.) 157; *Morse* v.

*Ballou,* 90 Atl. (Me.) 1091; *King* v. *Johnson,* 83 S. E. (Va.) 1070; *Lane* v. *Dillon,* 85 S. E. (S. C.) 369; *Black* v. *Jones,* 264 Ill. 548, 555. "It is a well settled rule of construction, that technical words of limitation used in a devise, such as *heirs* generally, or *heirs of the body,* shall be allowed their legal effect, unless from subsequent inconsistent words it is made perfectly plain that the testator meant otherwise. Or, to use the language of Lord Eldon, in *Wright* v. *Jesson,* 2 Bligh 1, the words *heirs of the body* will indeed yield to a particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or any expression showing the particular intent of the testator, but that must be clearly intelligible and unequivocal." *Clarke* v. *Smith,* 49 Md. 106, 117. We must hold, therefore, that the intention of the testatrix was to create in the devisees an estate of inheritance—an estate in fee tail—unless we find words in the will which clearly show that the testatrix meant something else.

It is contended that the use of the words "of either," the devise over upon default of issue, the word "limited" in the phrase in the codicil, "to have and to hold as limited in said fifth article of my said will," and the fact that the annuity given by the fifth paragraph of the will was for the life of the annuitants and the survivor of them merely, tend to show an intent on the part of the testatrix that the devise of the land was to be for life only in the first takers. It is argued that the words "of either" in the phrase "and to the heirs of the body of either," would prevent Kahakuakoi and Kealohapauole from taking more than a life estate because each of them might have left heirs, not of their joint bodies, who could not take by descent from the other spouse and, hence, could take only as purchasers. And so it is urged that, in order to carry out the apparent intention, the estate in the first takers must be held to be an estate by the entirety for life, and those of the heirs of the

body of either remainders. The first takers, being husband and wife, presumably took by the entirety. *Robinson* v. *Aheong*, 13 Haw. 196. The statute (R. L. 1915, Sec. 3132) providing that all grants and devises of land to two or more persons shall, unless it manifestly appears to have been otherwise intended, be construed to create estates in common, does not apply here since it was enacted after the will took effect. But we think the conclusion reached by counsel is not sound. The word "either" does not refer to the first takers or necessarily affect the estate devised to them. It relates only to the inheritance. There is no legal obstacle to the creation of a joint estate in fee tail or fee simple with several inheritances. 2 Jarman on Wills (6th ed.) 267; *Ex parte Tanner*, 20 Beav. 374, 52 Eng. Rep. 647; *Doe* v. *Green*, 4 M. & W. 229, 150 Eng. Rep. 1414. And we see no reason why the principle should not apply in the case of an estate by the entirety in tail. It is really of no practical importance in this case whether the first takers be regarded as having been tenants by the entirety, joint tenants or tenants in common, and as this case does not involve a controversy between two different sets of heirs of the first takers it is a matter of academic interest only as to how the heirs of one spouse who were not also heirs of the other, had there been such, would have taken. We think, however, that the contention of counsel for the defendant in error that without the words "or either" the descent would have been limited to the heirs of the joint bodies of the first takers, thus creating an estate tail special, and that that word was used to express the intention to create an estate tail general is sound. Under this theory the right of possession of the separate heirs of the spouse first dying, if any, would merely be in abeyance during the life of the surviving spouse. It is to be noted, in this connection, that in the clause in question no words of separation or futurity were used to draw a line of demarcation between the estate of the first takers and

that of the heirs.  The devise over to the trustees upon default of issue does not militate against the theory of an estate of inheritance.  It is not only feasible to limit a remainder after an estate tail upon failure of issue, but, in order to complete the testamentary disposition, is the natural thing for a testator to do.  We think the use of the word "limited," in the codicil, does not support the claim of the plaintiff in error.  As said in Anderson's Law Dictionary, " 'To limit' an estate is to define the period of its duration.  The words employed are thence termed 'words of limitation,' and the act itself 'limiting' the estate."  Bouvier says the limitation of an estate is "The definition or circumscription, in any conveyance, of the interest which the grantee is intended to take."  2 Bouv. L. Dict. (3d ed.) 2021.  The word "limited" is often used in the sense of "defined," and was so used in the clause referred to.  By the provision in the codicil the testatrix meant, and clearly said, that she gave to Kahakuakoi and Kealohapauole, in lieu of the devise contained in the fifth article of the will, the same estate in the land known as Hanohano as, by said article, she had given to them in the land called Mauna Kamala.  Nor do we think the fact that the annuity was given to the same devisees for their lives and that of the survivor throws any light on the intention of the testatrix with reference to the devise of the real estate.  If, instead of the gift of the annuity, there had been a devise to the same parties of an express life estate in another piece of land, it could not have been held that it pointed to an intention to create a similar estate in the land of Hanohano.  On the contrary, the difference in phraseology would have indicated an intent to create different kinds of estates.  We conclude, therefore, that there is no language in the will which shows that the testatrix used the words "heirs of the body" in any other than their usual and technical sense.  On the other hand, there is affirmative evidence tending to show that the

testatrix did not mean that Kahakuakoi and Kealohapauole were to have an estate for life only. In every instance where the will expressly created an estate for life the remainder was devised to the trustees, and there was a provision in the first codicil that "I hereby give the power to all of the beneficiaries named in my said will, and in this codicil, to whom I have given a life interest in any lands, to make good and valid leases of such lands for the term of ten years; which said leases shall hold good for the remainder of the several terms thereof after the decease of the said devisees, the rent however, after such decease to be paid to my executors or trustees." That provision tends to show that the testatrix did not intend to give an estate in remainder to the heirs of the bodies of Kahakuakoi and Kealohapauole, and is strongly indicative of an understanding on her part that in every case where a life estate had been devised the remainder over was given to the trustees.

The rule is invoked that in case of doubt a testator will be presumed to have intended a legal estate rather than an illegal one. And it is urged that as fees tail cannot exist in this jurisdiction it should be presumed that Mrs. Bishop did not intend to create an estate in fee tail by the devise in question. The presumption does not operate with much force in the case at bar since an impression seems formerly to have existed—how prevalent it was we do not know— that fees tail could exist here, and there was no reported ruling to the contrary till the case of *Rooke* v. *Queen's Hospital* was decided in 1900. In a jurisdiction where fees tail have been abolished the courts would be slow to construe a will executed after the abolition as intending to create such an estate. Such an intention would not be implied. But where the language used in a will shows unmistakably that such was the intention or attempt of the testator the courts cannot do otherwise than recognize the fact and give such

effect to it as they may under the law. As to the will in hand we have no doubt as to what the testatrix intended.

It is definitely settled that an estate tail cannot exist or be created in this Territory. *Rooke* v. *Queen's Hospital, supra; Nahaolelua* v. *Heen, supra; Boeynaems* v. *Ah Leong, supra.* In the absence of statute, what is the proper course for the court to pursue in a case like this? The ruling in *Nahaolelua* v. *Heen* was to the effect that the attempt to create a fee tail may be given the effect of creating either an estate in fee simple in the first taker, or a life estate in the first taker and a remainder in fee simple in the issue, according to whether the one effect or the other will go more nearly towards carrying out the intention of the grantor or testator in each case. The other alternative would be to hold the entire grant or devise to be void. But that course has not been adopted here or elsewhere. Here, the plaintiff in error contends for a life estate and remainder on the ground that the will shows an intention on the part of the testatrix to benefit the heirs of the body of the first takers, and, further, because the testimony in the case shows that the plaintiff's grandmother was a cousin of the testatrix, and that the testatrix showed a personal interest in the plaintiff's mother and a practical interest in the welfare of the plaintiff herself. There is nothing in the will, however, beyond the mere limitation to the heirs of the body to indicate that the testatrix intended any benefit to the heirs of the first takers, and, as a futile attempt to create an estate in fee tail is not to be held in every case to create a life estate and remainder, it does not afford a sufficient reason for so holding in the present case. The case of *Nahaolelua* v. *Heen* involved the construction of a deed. It there appeared that on August 10, 1871, one Elizabeth K. St. John, the mother of the plaintiffs, in contemplation of marriage, conveyed certain land to trustees to hold upon trust for the use of the trustor until her marriage to

one Huakini; to pay the net income to her, after marriage, during her coverture with Huakini; to, in case of her death after marriage and during the lifetime of her husband, leaving issue of the marriage, apply the net income to the maintenance of such issue during minority; and, upon such issue obtaining majority, to convey the land to them. On September 13, 1873, the trustees executed the deed which required construction. It recited the execution of the prior deed, the marriage of the parties, and the birth of a son; and stated the consideration to be the marriage, the birth of the child, the special request of the grantee, and the payment of one dollar. It conveyed the land to the said Elizabeth Huakini, "and the heirs of her body forever." The deed contained a provision which it was held should be disregarded as being repugnant to the grant, but which, since it was held that the deed attempted to create an estate tail, and that estates tail do not exist in this Territory, could properly be taken into consideration in connection with the question as to how best to approximate the intention of the party, as follows: "In special trust for the use and benefit of her son Edward Nahonoomaui Kia, and such other child or children as may hereafter be born to her, and his or their heirs and assigns forever as he or they shall arrive at the age of legal majority." After referring to the rule that the intention of the parties to a deed is to be ascertained and given effect to if practicable, the court said, "Applying this rule, it is apparent that the intent of the parties to the deed of September 13, 1873, will be most nearly carried out by holding that Elizabeth should take a life-estate, with remainder in fee simple to the plaintiffs, 'the heirs of her body.' This view gives effect as nearly as possible to those formal parts of the deed usually regarded as being sufficient, under the law, to pass title." The decision was followed in *Boeynaems* v. *Ah Leong,* supra, where the same deed was involved, without further

discussion, and that case, in turn, was affirmed by the Supreme Court of the United States, without opinion. The facts in the *Nahaolelua* case were unique, and we think the case was rightly decided; but, except that they included an attempt to create an estate in fee tail, they bear no resemblance to the facts in the case at bar. We reaffirm the ruling made in that case that, in this jurisdiction, when a futile attempt has been made to create an estate in fee tail it will take effect either as a fee simple or a life estate and remainder according to which appears to more nearly effect the intention of the grantor or testator, and hold, further, that ordinarily it will be held to take effect as a fee simple unless something appears which should send it the other way. Whether the court could go beyond the language of the will and consider the extrinsic testimony as to surrounding circumstances need not be decided as, in our opinion, the testimony referred to in this connection throws no light on the subject. What the testatrix might have done had she been advised that she could not create an estate tail is left to conjecture. There is nothing tending to show a preference for a life estate and remainder.

In a jurisdiction where fees simple conditional, but not fees tail, are recognized an unsuccessful attempt to create an estate in fee tail might take effect as a fee simple conditional. See *Archer* v. *Ellison,* 5 S. E. (S. C.) 713; *Pierson* v. *Lane,* 60 Ia. 60. But it was pointed out in *Rooke* v. *Queen's Hospital, supra,* at p. 394, that, for the same reasons that estates tail have no place under the laws of Hawaii, fees simple conditional cannot exist here. In *Jewell* v. *Warner,* 35 N. H. 176, the court, after showing that the statutes of New Hampshire relating to wills and the descent of property were irreconcilable with the statute *de donis* and repugnant to the nature of estates tail, said (p. 185), "The restrictive words added to 'heirs' 'of the body,' or 'male or female of the body,' or 'by the body of any particu-

lar wife or husband,' are simply inoperative. They create neither an estate tail nor a fee simple conditional, but an estate in fee simple, as if they had been entirely omitted." See also *Merrill* v. *Baptist Union,* 73 N. H. 414. In *Calder* v. *Davidson,* 59 S. W. (Tex.) 300, 302, where the court had before it a deed conveying land to "Mary Walker Calder and the heirs of her body by the said R. J. Calder," it was said, "At the common law the language would have created a fee tail special, and, since estates tail are forbidden in this state, the deed must be held to have vested a fee simple title in the first taker." And see *Rowland* v. *Warren,* 10 Ore. 129. In a jurisdiction where estates tail in real property cannot exist the situation, where there has been an attempt to create such an estate, is somewhat analogous to that where there has been an attempt to create an estate tail in personal property, and, in that case, it is held that the party will take an absolute interest in the property. 10 R. C. L. 657; *Elton* v. *Eason,* 19 Ves. Jr. 73; *Smith's Appeal,* 23 Pa. St. 9. We take the view that where it does not appear that in the particular case a life estate and remainder would more nearly comply with the ultimate disposition of the property and the direct benefits to be conferred thereby which the grantor or testator had in mind the attempted fee tail should take effect as a fee simple in the first taker. This, because both are estates of inheritance, and belong to the same genus; both, at common law, were subject to the incidents of dower and curtesy, and were without impeachment of waste; the tenant in tail could bar the entail; an estate tail, in point of law, bears little resemblance to a life estate and remainder; and the law generally favors the first taker. In short, in such a case as this, a holding that the first taker shall have an estate in fee simple will go as near as may be under the law toward effectuating the futile intent to create an estate tail.

We hold that Kahakuakoi and Kealohapauole took under the will and codicil an estate in fee simple in the land in dispute, and that the plaintiff has no interest therein.

The judgment of the circuit court is affirmed.

*D. L. Withington* (*Castle & Withington* and *W. C. Achi* on the brief) for plaintiff in error.

*W. F. Frear* and *J. W. Cathcart* (*Frear, Prosser, Anderson & Marx* and *Thompson, Milverton & Cathcart* on the brief) for defendant in error.