## In re BISHOP'S ESTATE.

### KING v. SMITH et al.

(Circuit Court of Appeals, Ninth Circuit. March 7, 1918.)

No. 3000.

1. COURTS ⬅️23—JURISDICTION.

An individual cannot confer, upon a court not otherwise possessing such powers, jurisdiction as it pertains to any particular matter, and the incumbents of the court cannot act as to such matters as a court.

2. WILLS ⬅️692—CONSTRUCTION—POWER TO APPOINT TRUSTEES.

Prior to 1892 the Supreme Court of Hawaii, as a court, possessed no original equity jurisdiction, but for several years previously such jurisdiction was vested in the justices of such court and in the judges of the circuit court, as chancellors, sitting at chambers, severally, and not jointly, and from their decisions so made an appeal might be taken to the Supreme Court in banco. During such time a charitable trust was created, by a will which named the first trustees and provided that the number should be kept the same and that vacancies should be filled "by the choice of a majority of the justices of the Supreme Court." *Held*, that such power of appointment was conferred upon the justices as individuals, and not in their official capacity; the designation of their office being merely descriptio personæ. *Held*, further, that such power of appointment, when exercised, was final, and could not be reviewed.

3. JUDGES ⬅️47(1)—DISQUALIFICATION TO ACT—BIAS AND PREJUDICE.

The fact that such justices, as individuals, made an appointment to fill a vacancy, did not disqualify them, sitting as a court, from entertaining an appeal from the circuit court in a suit involving the validity of such appointment.

Appeal from the Supreme Court of the Territory of Hawaii.

Petition in equity by William O. Smith, E. Faxon Bishop, Albert F. Judd, and Alfred W. Carter, as trustees under the will of Bernice P. Bishop, deceased, for confirmation of the appointment of William Williamson as a cotrustee. A decree holding such appointment invalid, and appointing Charles E. King trustee, was reversed by the Supreme Court of Hawaii, and King appeals. Affirmed.

This case comes here on appeal from the Supreme Court of the territory of Hawaii. It has to do with the construction of the last will and testament of one Bernice Pauahi Bishop respecting the appointment of trustees for the administration of a trust established for the erection and maintenance of schools, preferably for Hawaiian boys and girls, of pure or mixed blood, to be known as the "Kamehameha Schools." Large discretion is left to the trustees in the execution of the trust in furtherance of its objects. The will bears date October 31, 1883, and was probated December 2, 1884. The testatrix named five persons under the will as trustees to "carry into effect the trusts specified." Then follows this provision: "I direct that a majority of my said trustees may act in all cases, and may convey real estate, and perform all of the duties and powers hereby conferred; but three of them at least must join in all acts. I further direct that the number of my said trustees shall be kept at five, and that vacancies shall be filled by the choice of a majority of the justices of the Supreme Court, the selection to be made from persons of the Protestant religion."

On May 19, 1916, Samuel M. Damon, one of the trustees, desiring to be relieved of his duties as such, presented his written resignation, and on June 9th such resignation was presented to the first judge of the First judicial

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

circuit, who, on the petition of all of the trustees, made an order accepting the same, thus leaving a vacancy in the board. On the same day the vacancy was brought to the attention of the justices of the Supreme Court, and, all the justices concurring, they named and appointed William Williamson to succeed Damon under the provisions of the will. Thereupon the remaining trustees presented to the circuit judge their petition, setting forth the qualifications of Williamson and the fact of his appointment by the justices, and prayed a confirmation of such appointment. Upon a hearing touching the fitness of Williamson to discharge the duties devolving upon a trustee, at which evidence was adduced, the judge, on July 29, 1916, decided that the appointment of Williamson by the justices of the Supreme Court was without authority and void, and made and entered an order appointing one Charles E. King as trustee to fill the vacancy occasioned by the resignation of Damon, and fixed his bond at $20,000, if given separately, providing, however, that a new joint bond on behalf of all of the trustees, including King, might be given in the sum of $100,000. On August 3, 1916, a decree was entered in accordance with the decision. From the decree the trustees appealed to the Supreme Court, resulting in a reversal of the circuit judge, to whom the cause was remanded, sitting at chambers in equity, with directions to dismiss the petition asking for approval of the appointment of Williamson, and for such further proceedings as were consistent with the views expressed by the opinion of the court. From the decree thus rendered by the Supreme Court, King prosecutes an appeal to this court.

E. C. Peters, of Honolulu, T. H., for appellant.

Henry Holmes, Clarence H. Olson, and Paul R. Bartlett, all of Honolulu, T. H., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. Two questions are presented here for our determination: First, whether the justices of the Supreme Court were disqualified to sit in the cause on its appeal from the circuit judge; and, second, whether the designation of the justices of the Supreme Court for filling vacancies in the board of trustees, under the will, by choice, of a majority of such justices, is a descriptio personæ merely, or a naming of such justices in their official capacity, or as a court. As the decision of the first question depends somewhat upon the disposition of the latter, we will treat of the latter first.

It is not doubted that a testator may make such disposition of his property as he desires. He may devolve it in trust to meet the requirements of a designated purpose, and he may create a board of trustees for administering the trust; and, if the object be charitable, he may devise the means, if they be lawful, for maintaining the board in perpetuity for accomplishing the object and purposes of the trust. Inglis v. Trustees of the Sailors' Snug Harbor, 3 Pet. 99, 7 L. Ed. 617; In re John's Will, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242.

[1] The device for perpetuating the board of trustees is that the vacancies shall be filled by the choice of a majority of the justices of the Supreme Court of the territory of Hawaii. As an aid in determining whether the testatrix intended to vest the power of appointment in the justices of the Supreme Court as individuals, or in them as officers of the court, it will be well to ascertain what were the functions of the court, as well as of the individual members thereof, at the time of the execution of the will. If their functions were such, acting by

a majority, as to indicate jurisdiction in equity to make such appoint-- ments, it might be presumed that the testatrix intended that the jus-- tices were to act officially in discharging the office imposed upon them by the will. But, if the justices were without power in that particu- lar, the inference, from the adoption of that method, would be direct- ly to the contrary, for an individual cannot confer upon a court, not otherwise possessing such powers, jurisdiction as it pertains to any particular matter, and the incumbents of the court cannot act as to such matters as a court. Leman v. Sherman et al., 117 Ill. 657, 6 N. E. 872; Harwood v. Tracy, 118 Mo. 631, 24 S. W. 214. If action is had in such a case, it must be by the members of the court as individuals, and not officially. The Supreme Court has stated the situation then existing as to jurisdiction, in its opinion in the present case, as fol- lows:

"By constitutional and statutory provisions prior to the Judiciary Act of 1892 original jurisdiction in equity was vested in the Supreme Court and circuit courts. Such jurisdiction was exercised by the Chief Justice as chancel- lor, the first associate justice as vice chancellor, and, subsequent to 1862, by the second associate justice, acting severally and not jointly, and from the decision of the chancellor, vice chancellor, or second associate justice an appeal lay to the Supreme Court in banco. Constitution 1852, art. 86; Con- stitution 1864, art. 68; Compiled Laws 1884, §§ 847, 848. After the act of 1878 (see Compiled Laws 1884, p. 389), and prior to the Judiciary Act of 1892, the several justices of the Supreme Court sitting at chambers, and the several circuit judges, exercised original equity jurisdiction. A careful examination of the decisions shows that it was the rule by Constitution, statute and practice for a single justice to sit in equity matters; his decision being subject to appeal to the Supreme Court in banco. To this rule, custom, or practice there appears to have been only two exceptions, those in the cases of Tucker v. Estate of Metcalf and Kalakaua v. Keaweamahi, where, by agreement, the first-named cause was submitted to the Chancellor and Hartwell, J., and in the latter cause a demurrer was heard in the first instance by the full court, by consent, for the purpose of expediting the decree in the cause and making the decision on the demurrer final, analogous to reserving a question. The very fact that in these two last cases named the submission to more than one justice was by consent tends to show the departure made in these cases from the usual practice in equity matters wherein original jurisdiction in equity was exercised by a single justice sitting in equity at chambers. This prac- tice obtained at the time the will of the testatrix was written, had obtained for many years prior thereto, and was in force at the time the will was probated and took effect."

We adopt this statement as controlling, first, because it is a construc- tion by the highest court of the territory of the Constitution and laws thereof, as well as a judicial determination of the practice and proce- dure obtaining on the equity side of her courts, and is therefore en- titled to great weight (Hawaii County v. Halawa Plantation, 239 Fed. 836, 839, 152 C. C. A. 622; Kealoha v. Castle, 210 U. S. 149, 28 Sup. Ct. 684, 52 L. Ed. 998); and, second, because the holding, upon a re- view of the Constitution and statutes of the territory, seems to be a correct interpretation thereof as it relates to the question in hand. In re Estate of Bernice Pauahi Bishop, 11 Hawaii, 33, cited by counsel for appellant, seems to lend support to this view.

We have been aided greatly in our investigation of this matter by the very able analysis of the several Constitutions and statutes of the

territory, as they have been adopted and modified from time to time, contained in the brief of counsel for appellant. We are unable, however, to adopt the conclusions reached respecting the effect in practice and procedure, as pertaining to equity jurisdiction, under such Constitutions and statutes. It was not until the Judiciary Act of 1892 (Laws 1892–93, c. 57) that the Supreme Court became a purely appellate court, with the exception of such original jurisdiction as was reposed in it for the purpose of assisting its appellate functions. Wahiawa Sugar Co. v. Waialua Agr. Co., 13 Hawaii, 109; Estate of Bernice Pauahi Bishop, supra. It is conceded that the circuit courts now have and exercise equitable jurisdiction over trusts.

On the question of the intention of the testatrix, some analogous cases may be noticed. In Shaw v. Paine, 12 Allen (Mass.) 293, the testator provided that, whenever a vacancy should occur in the number of trustees, the surviving acting trustees should, by petition, nominate a suitable person or persons, to be appointed by the judge of probate for the time being as such trustee or trustees, and, in default of such nomination and appointment, it was directed "that a new trustee or trustees shall in every such case be appointed by the said judge of probate or by one or more of the justices of the Supreme Judicial Court." A new trustee was nominated by the remaining trustees to the judge of probate, and by him appointed, and it was held that the judge of probate, in making the appointment, did not act officially, but under the will. In passing upon the case, the court said:

"On the other hand, it is equally certain that it is not in the power of a testator to confer upon a judicial tribunal a jurisdiction which is not conferred by law. If, therefore, a testator gives by his will to a judicial officer a power of appointment which the law does not give or sanction, the reference to the official character must be regarded as only a description of the person who is to execute the power."

On further discussion, the court observed that a probate court has a duty to perform, as regards trustees who are made such by the act of the testator, in that the judge must approve the bond of such trustees. Then the court proceeds:

"This requirement of law seems to afford a sufficient explanation of the testator's intention in requiring the judge of probate to 'appoint' the new trustees, whom the surviving or acting trustees are directed to 'nominate.' A nomination in conformity with the will determines the persons who are to be trustees."

In National Webster Bank v. Eldridge, 115 Mass. 424, a similar decision was rendered. In Moore v. Isbel, 40 Iowa, 383, a trust deed contained a condition by which, upon the failure of the trustee to act, the acting county judge was authorized to appoint a successor, and it was held that the provision conferred the power of appointment upon the individual who filled the office of county judge at the time the appointment was demanded.

The cases cited by appellant do not disagree in principle with these; the object being in every case to determine, from the language and the attendant situation, the true intention and purpose of the testator. As was said in Leman v. Sherman et al., 117 Ill. 657, 665, 6 N. E. 872, 875:

"Where it is manifestly the intention of the testator to name the particular individual, who holds the office of judge, as the donee of the power, his designation as judge of a court will be regarded as mere descriptio personæ, and the power will be sustained, as vested in the man, and not in the office."

Now, what do we find here? We find a Supreme Court, consisting of three members, each member separately vested with the function of a chancellor, and in that respect possessing original, not appellate, jurisdiction. Collectively, however, the members have appellate jurisdiction to revise the orders and decrees of the individual members. We must presume that the testatrix was aware of the construction and functions of the court, and of the individual members thereof, and, in naming a majority of the justices of the Supreme Court for making choice of trustees to fill vacancies, that she did so advisedly. In their appellate jurisdiction, a majority would prevail and determine the controversy. If the testatrix intended that a majority of the court in its appellate jurisdiction should act, she could have made her meaning clear by simply investing the Supreme Court with the power of appointment. If she had done that, the court would necessarily have acted by majority, if all the justices did not concur. If, however, they did concur, three justices would make the appointment, instead of a majority, or two.

[2] Did she mean so to impose the power of appointment? Her language, under the conditions, is not apt for the purpose. She names a majority of the justices. As we have seen, each justice, acting apart from the others, was empowered to exercise equitable functions. Any two of them, however, might act together in the performance of such functions, and this would constitute a majority of the justices of the Supreme Court. But, even yet, did the testatrix mean that they should so act? The justices in their work at chambers, under the practice and procedure, acted singly, and not in pairs, or by a concurrence of all. So that, if she meant that the justices should act in their official capacity as chancellors or vice chancellors, again her language is inapt. But, if she meant that the justices should act in their individual capacity, then her language suits the occasion, and there is no inharmony or incongruity in her disposition of the power of appointment. It is therefore the more reasonable construction to suppose that the testatrix intended to impose the power of appointment upon a majority of the justices in their individual, and not in their official, capacity; and we so construe the will.

Further, the power of appointment, when exercised, is final. The vacancy or vacancies, whatever they may be, are filled by the act. The process of appointment ends there, and no court has authority, except for just cause for removal, to disturb the appointment; that is to say, no court has authority or power to review or supervise the appointment made by the justices.

[3] Now, as to the first question, the Organic Act of the territory (section 84) declares that:

"No person shall sit as a judge or juror in any case in which his relative by affinity or by consanguinity within the third degree is interested, either as a plaintiff or defendant, or in the issue of which the said judge, or juror may have, either directly or through such relative, any pecuniary interest."

This is the act relied upon as disqualifying the Supreme Justices to act on the circuit judge's order or decree; it being claimed that such justices have a personal, as well as a property, interest in the issue submitted for decision.

It having been ascertained that the power of appointment was delegated to the justices as individuals, and not as a court or judges thereof, it is scarcely discernible how they are affected, either personally or pecuniarily. It is absolute that they can have no pecuniary interest. They get nothing, and can expect nothing, by reason of an appointment to fill a vacancy, and can derive no benefit from the act whatsoever. It is plain that the personal interest is only that which may arise from pride of opinion to have their choice of appointment sustained. This does not necessarily entail judicial bias. It is not claimed that it arises from any relationship to the parties, either by affinity or consanguinity. Hence, by declaration of the Organic Act, they are not disqualified.

These considerations lead to an affirmance of the Supreme Court, and such will be the order of this court.