KINNEY v. OAHU SUGAR CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1919.)

No. 3042.

1. WILLS ⇐605—CONSTRUCTION—ESTATE TAKEN BY DEVISEE—FAILURE OF ESTATE TAIL.

A devise of land in Hawaii to a woman and her husband, "and to the heirs of the body of either, * * * upon default of issue the same to go to my trustees upon the trust below expressed," *held* to use apt words to create an estate tail, but, since such estate cannot exist under the law of Hawaii, to vest the devisees with an estate in fee simple.

2. COURTS ⇐405(3)—RULE OF DECISION—HAWAII.

A settled rule of construction of conveyances and devises in the territory of Hawaii must be accepted by the appellate court, in a case coming from that district, as persuasive, if not of binding force.

Ross, Circuit Judge, dissenting.

In Error to the Supreme Court of the Territory of Hawaii.

Action at law by Helen K. Kinney against the Oahu Sugar Company, Limited. Judgment for defendant, and plaintiff brings error. Affirmed.

David L. Withington, of Honolulu, T. H. (Castle & Withington and W. C. Achi, all of Honolulu, T. H., of counsel), for plaintiff in error.

Frear, Prosser, Anderson & Marx and Thompson & Cathcart, all of Honolulu, T. H., and Frederick W. Milverton, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error brought ejectment to recover the possession of certain land in the island of Hawaii, claiming title as one of the heirs of the body of Kahakuakoi and Kealohapauole, who were devisees under the will of Bernice Pauahi Bishop, who died October 16, 1884, and also as the heir of a deceased brother. The devisees so named had three children, Niulii, George, and Lydia. Niulii died in 1900, leaving two children, John Paalua and Helen, the plaintiff. Kahakuakoi and Kealohapauole died, respectively, in 1910 and 1914, and John Paalua died in 1915. The defendant claimed title through the foreclosure of a mortgage executed by Kahakuakoi and Kealohapauole, under which the land was sold on January 28, 1893, and also under a deed from Kahakuakoi and Kealohapauole and their children George and Lydia.

[1] The rights of the parties to the action depend upon the proper construction of the following provisions of the will:

"I give and bequeath unto Kahakuakoi (w) and Kealohapauole, her husband, and to the survivor of them, the sum of thirty dollars ($30) per month (not $30 each), so long as either of them may live. And I also devise unto them and to the heirs of the body of either, the lot of land called 'Mauna Kamala,' situated at Kapalama, Honolulu; upon default of issue the same to go to my trustees upon the trusts below expressed."

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In a codicil the testatrix provided as follows:

"I revoke so much of my said will as devises the land known as 'Mauna Kamala' to Kahakuakoi (w) and Kealohapauole her husband; and in lieu thereof I give, devise and bequeath unto the said Kahakuakoi (w) and Kealohapauole (k) all of that tract of land known as Hanohano situated at Ewa, Island of Oahu, formerly the property of Puhalahua; to have and to hold as limited in said fifth article of my said will."

The defendant contended that the words "heirs of the body of either" are words of inheritance and not of purchase, and at common law would vest an estate in fee tail; that, since in Hawaii there can be no estate in tail, the estate so devised, in the absence of words to indicate a contrary intention, was a fee simple; that it was the intention of the testatrix to create by the devise an estate of inheritance and not a life estate and remainders; and that the words of the will and the codicil, together with the legal presumptions, tend to support the view that it was her intention that the devisees named should take title in fee simple rather than for life only. The plaintiff denied that at common law the devise would create a fee tail; that, even if the words of the devise were such as to create a fee tail at common law, they are in Hawaii to be construed as creating a fee simple or an estate for life, with a remainder over, according to which of the two constructions will carry out more nearly the intention of the testatrix as drawn from the will and the surrounding circumstances; that the use of the words "of either," and the devise over in default of issue, show the intention of the testatrix that the heirs of the body of either were to take an interest; and that, as they cannot take by descent, they must take by purchase, and that the estate created by the devise is a life estate by the entirety to the devisees named therein, with the remainder over to the heirs of the body of either; the presumption being that the testatrix intended to create a legal estate rather than an illegal one, a devise for the children of the devisees rather than a fee tail, which cannot exist in Hawaii, and that this construction is assisted by the use of the word "limited" in the codicil. In the Circuit Court a jury trial was waived, and the court found for the defendant, holding that the devise created a fee-simple title in the devisees named therein. On writ of error from the Supreme Court of the territory the judgment was affirmed. Kinney v. Oahu Sugar Co., 23 Hawaii, 747. That judgment is by writ of error brought before this court for review.

From a careful consideration of the terms of the will we deduce the following conclusions:

First, the devise in question uses apt words to create an estate tail. It contains the requisite words of inheritance "heirs of the body." "That these words, if alone considered, created an estate tail, is hornbook law." Pearsol v. Maxwell, 76 Fed. 428, 22 C. C. A. 262. The presumption is that technical words used in a will have been used in their technical sense, unless a contrary intention clearly appears from the context. 40 Cyc. 1398; Pearsol v. Maxwell, supra; Nightingale v. Sheldon, 5 Mason, 336, Fed. Cas. No. 10,265; Shuttle & Weaver Land & Imp. Co. v. Barker, 178 Ala. 366, 60 South. 157. "Any ex-

pressions in the will denoting an intention to give the devisee an estate of inheritance descendable to his, or some of his, lineal, but not collateral, heirs have always been regarded as a sufficient devise of a fee tail." 10 R. C. L. 658; Smith v. Pendell, 19 Conn. 107, 48 Am. Dec. 146; Hudson v. Wadsworth, 8 Conn. 348; Hill v. Hill, 74 Pa. 173, 15 Am. Rep. 545; Doty v. Teller, 54 N. J. Law, 163, 23 Atl. 944, 33 Am. St. Rep. 670. We find no ground to sustain the plaintiff's contention that the word "either" in the clause, "and I also devise unto them and to the heirs of the body of either," has the effect to convert the estate of the first takers into a life estate. These are words of limitation defining the estate given to the devisees. The word "either" relates to the inheritance only. It does not affect the estate of the devisees. It does not impose a superadded limitation, nor does it cause a change in the course of descent. It has to do only with the source from which the heirs of the body shall spring. Its effect is to create a fee tail general instead of a fee tail special. There is entire absence of words of separation or futurity to sever the estate of the first takers from that of their heirs. A case in point is Wright v. Scott, 4 Wash. C. C. 16, Fed. Cas. No. 18,092.

A testator had devised lands to his daughter and to her husband, "to * * * their heirs begotten of their bodies, or assigns forever; or for want of such heirs or assigns, then to the heirs begotten by or of either of them." Mr. Justice Washington said:

"Can it admit of a doubt that the testator intended, in the first instance, to give to his daughter and to his son-in-law a joint estate in fee tail? * * * The words are, 'to his well beloved daughter, and to her husband, J. W., and their heirs begotten of their bodies.' The most unlettered man, however ignorant he may be of the difference between a fee simple and a fee tail, knows that the heirs of the body of the devisee cannot include general heirs, who are not of his body. Again, can it be doubted that the testator intended, in the event of the death of his daughter, or of her husband, without issue of their bodies, to give the estate to the heirs of the body of the survivor of them? * * * The expressions, 'heirs begotten by or of either of them.' have precisely the same meaning here that they have in the devise of the particular estate."

Second, it was the intention of the testatrix to create an estate tail. The will and the codicils are drawn with meticulous care. The sole office of the codicil was to substitute one parcel of land for another, and it does not add to or take away from or explain the nature of the estate which had been devised, or make more clear the intention of the testatrix. The words, "to have and to hold as limited," express only what had already been provided, that the estate should remain, the same as before defined, a limited estate, intended to be limited as an estate tail, an estate which is defined as a limited estate. "'Heirs of the body' are strictly and technically words of limitation." Pearsol v. Maxwell (C. C.) 68 Fed. 513; Linn v. Alexander, 59 Pa. 43, 46. The testatrix knew how to express her intention. In appropriate and accurate language she made several devises of land to devisees during the term of his or her natural life, with remainder over. She also devised land in fee simple, "to have and to hold, with the appurtenances

to him, his heirs and assigns, forever." A significant fact is that the first codicil gives power to "all of the beneficiaries named in my said will and in this codicil to whom I have given a life interest in any lands, to make good and valid leases of said lands for the term of ten years; which leases shall hold good for the remainder of the several terms thereof, after the decease of said devisees, the rent, however, after such decease to be paid to my executors or trustees." If the devise in question was intended to create a life estate in the devisees named, and they had made the lease which the codicil authorized them to make, the trustees, and not the children, would, under the will, have received the ensuing rentals. It is evident that the testatrix and Judge Hatch, formerly a Justice of the Supreme Court of Hawaii, who drew the will, were of the opinion that an estate tail could be created in Hawaii. In the opinion of the court below it is said that this impression seems formerly to have prevailed. That such was the impression is further shown by the discussion in Rooke v. Queen's Hospital, presently to be considered. The devisees also understood that they were tenants in tail. In 1890, six years after the death of the testatrix, they leased the land for a term of 50 years. They thought also that the entail could be barred by their deed, for in mortgaging the land in 1890 they described it as the premises "devised to us by will of B. Pauahi Bishop," and they conveyed the same "freed and discharged from any estate tail of us, and all remainder estates and powers to take effect after the determination or in defeasance of such estate tail."

In nearly all the states of the Union estates tail have been either abolished or greatly modified by statute, being usually converted into estates in fee simple, in the hands of the first taker, or into life estates with remainders in fee. In two of the states estates tail have never been recognized, they having been deemed to be out of harmony with the genius, spirit, and objects of the state institutions. Pierson v. Lane, 60 Iowa, 60, 14 N. W. 90; Jordan v. Roach, 32 Miss. 481. On similar ground the existence of estates tail was denied in Hawaii, in Rooke v. Queen's Hospital, 12 Hawaii, 375, decided in May, 1900. In that case the court gave exhaustive consideration to the question, and held that estates tail were never a part of the system of Hawaiian land tenures, and that the English system was never imported into the islands. Said the court: "We have no hesitation in holding that estates tail have no place under the laws of Hawaii." It appears from the opinion that the question was stoutly contested, that six briefs were filed by the twelve counsel engaged, together with opinions by six persons noted for their learning in real estate law in England and in the United States, one of which was by Professor Gray of the Harvard Law School, and another was by Sir Howard W. Elphinstone, one of the conveyancing counsel to the Chancery Division of the High Court of England. "These," said the court, "arrive at diametrically opposite conclusions." It appears, therefore, that at that time the belief was widely entertained that estates tail could be created in Hawaii.

The question of the effect of a deed which at common law would have conveyed an estate tail arose in the subsequent case of Nahaolelua v. Heen, 20 Hawaii, 372. A woman about to marry had conveyed to trustees land for her use until her marriage, and thereafter to pay the net income to her during her coverture, and, in case of her death leaving issue, to apply the net income to the maintenance of such issue during minority, and upon the issue reaching majority to convey the land to them. After the birth of issue the trustees, in 1873, by a deed which recited the trust and the birth of issue, reconveyed to her, and "to the heirs of her body," the said real estate, to have and to hold to her "and the heirs of her body forever. In special trust for the use and benefit of her said son, * * * and such other child or children as may hereafter be born to her." As the court could not declare the estate to be an estate tail, there were but two alternatives, either to hold it a fee simple or an estate for life in the grantee with remainder to her children. In arriving at the intention of the parties to that conveyance the court considered "all the provisions of the deed, as well as the situation of the parties," and said that the intent of the parties "would be most nearly carried out" by holding that the grantee therein took a life estate with a remainder in fee simple to the heirs of her body, and observed that the trust clause which followed must be disregarded as repugnant and contradictory to the formal parts of the deed. It is clear that the court, while denying effect to the trust clause as creating a trust, recognized its value as evidence of the intention of the parties, which very obviously was to make special provision for the welfare of the issue of the marriage, an intention that would have been thwarted had the deed been so construed as to create a title in fee simple in the grantee. The two deeds manifest two purposes of the woman who owned the land, first, to place the land beyond the control of the man whom she was about to marry, and, second, to provide for the welfare of her children. In construing the second deed there was in fact but one intention to seek, that of the grantee, the grantors being her trustees and bound to do her bidding. In the present case the court below, referring to Nahaolelua v. Heen, said:

"We reaffirm the rule made in that case that in this jurisdiction, when a futile attempt has been made to create an estate in fee tail, it will take effect either as a fee-simple or a life estate, and remainder according to which appears to more nearly effect the intention of the grantor or testator, and hold, further, that ordinarily it will be held to take effect as a fee simple unless something appears which should send it the other way."

[2] We take that utterance of the court to be an expression of the settled rule of construction of conveyances and devises in the territory of Hawaii, and that rule we must accept as persuasive, if not of binding force in a case which comes to us from that territory. Boeynaems, Bishop of Zeugma, v. Ah Leong, 242 U. S. 612, 37 Sup. Ct. 20, 61 L. Ed. 527; Lewers & Cooke v. Atcherly, 222 U. S. 285, 32 Sup. Ct. 94, 56 L. Ed. 202; John Ii Estate v. Brown, 235 U. S. 342, 35 Sup. Ct. 106, 59 L. Ed. 259; Kapiolani Estate v. Atcherley, 238 U. S. 119, 35 Sup. Ct. 832, 59 L. Ed. 1229, Ann. Cas. 1916E, 142; and Cardona v. Quinones, 240 U. S. 83, 36 Sup. Ct. 346, 60 L. Ed.

538. Following that rule, we agree with the Supreme Court of the territory that in the present case nothing appears that "should send it the other way."

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). This writ of error to the Supreme Court of the Territory of Hawaii was sued out to review the judgment of that court affirming the judgment of the Circuit Court of the First Circuit of Hawaii in favor of the defendant to an action of ejectment there brought by the present plaintiff in error for the recovery of a tract of land situated at Hanohano, district of Ewa, city and county of Honolulu—the plaintiff claiming title to an undivided one-third of the land as one of the heirs of the bodies of Kahakuakoi and Kealohapauole, devisees under the will of Bernice Pauahi Bishop, deceased, and as heir of a deceased brother. The will of the testatrix, who was a married woman, and who died October 16, 1884, made a number of bequests, and to which will were added a number of codicils. Kealohapauole was the husband of Kahakuakoi, and the fifth clause of the will of Mrs. Bishop made this bequest:

"Fifth. I give and bequeath unto Kahakuakoi (w) and Kealohapauole, her husband, and to the survivor of them, the sum of thirty dollars ($30) per month (not $30 each), so long as either of them may live. And I also devise unto them and to the heirs of the body of either, the lot of land called 'Mauna Kamala' situated at Kapalama, Honolulu; upon default of issue to go to my trustees upon the trusts below expressed."

The eleventh paragraph of the first codicil of the will is as follows:

"11. I revoke so much of the fifth article of my said will as devises the land known as 'Mauna Kamala' to Kahakuakoi (w) and Kealohapauole, her husband, and in lieu thereof I give, devise and bequeath unto said Kahakuakoi (w) and Kealohapauole (k), all of that tract of land known as Hanohano, situated at Ewa, island of Oahu, formerly the property of Puhalahua; to have and to hold as limited in said fifth article of my said will."

As the case is presented here, we must accept the facts to be that the land sued for was mortgaged December 15, 1890, by Kahakuakoi and Kealohapauole, her husband, to Bishop & Co., who were bankers, and was sold under foreclosure of the mortgage January 28, 1893. Under that foreclosure sale the defendant to the action, defendant in error here, claimed, through mesne conveyances as well as by adverse possession, ownership of the property. Three children, namely, Niulii, George, and Lydia, were born to Kahakuakoi and Kealohapauole. Niulii died in 1890, leaving two children, one of whom was the plaintiff in the action, and the other a boy named John Paalua. Subsequent to the sale under the foreclosure proceedings, to wit, on October 22, 1894, Kahakuakoi and Kealohapauole and George and Lydia Kealohapauole executed a deed of all of their right, title and interest in the land in question to the grantor of the present defendant in error.

Kahakuakoi died in 1910, the husband, Kealohapauole died in 1914, and John Paalua died in 1915, leaving alive his sister Helen, the plaintiff in error. The sole question, therefore, with which we have to deal is whether she took any estate in the land in controversy by virtue of the provisions of the will which have been set out.

255 F.—47

Reading its fifth clause and the eleventh paragraph of the first codicil thereto together, which of course must be done, I regard it as clear that the legal effect as well as the manifest intent of the testatrix was to substitute for the lot of land called "Mauna Kamala, situated at Kapalama, Honolulu," described in the fifth clause, "all of that tract of land known as Hanohano, situated at Ewa, island of Oahu, formerly the property of Puhalahua," and that only; so that the devise in question must be taken to read as follows:

"Fifth. I give and bequeath unto Kahakuakoi (w) and Kealohapauole, her husband, and to the survivor of them, the sum of thirty dollars ($30) per month (not $30 each), so long as, either of them may live. And I also devise unto them and to the heirs of the body of either, all of that tract of land known as Hanohano, situated at Ewa, island of Oahu, formerly the property of Puhalahua; upon default of issue to go to my trustees upon the trusts below expressed."

The money bequest of $30 a month, as will be readily seen, was to continue as long as either of the beneficiaries lived, and the devise of the Hanohano tract of land was to Kahakuakoi and Kealohapauole, her husband, "and to the heirs of the body of either" of them, coupled with the express declaration that upon default of such issue the land should go to the trustees named by the testatrix upon the trusts expressed in the will.

It is undoubtedly true that the devise to Kahakuakoi and Kealohapauole, "and to the heirs of the body of either" of them, considered alone, created an estate in tail; for, as said by Judge Dallas, in speaking of similar words, in the Circuit Court of Appeals of the Third Circuit, in the case of Pearsol et al. v. Maxwell et al., 76 Fed. 428, 22 C. C. A. 262, "that is hornbook law." But as an estate tail, general or special, cannot be created or exist in the territory of Hawaii (Rooke v. Queen's Hospital, 12 Hawaii, 375, 391), what is the result? In Nahaolelua v. Heen, 20 Hawaii, 372, the Supreme Court of the territory quoted with approval this from its previous decision in the Rooke Case:

"In some of the states in which fees tail do not exist, the estate is considered a fee simple in the first taker; in others, a life estate in the first taker and a remainder in fee simple in the issue; while in others, it is considered one or the other according to which appears to most nearly carry out the intention of the testator." "The first two classes of cases mentioned in the quotation," continued the court in the Heen Case, "depend upon statutes, while the third class, to which the case at bar belongs, is governed by the established rules of construction. The intent of the parties to a deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law. * * * The intention of the parties is to be ascertained by considering all the provisions of the deed as well as the situation of the parties, and then to give effect to such intention, if practicable, when not contrary to law.' 2 Devlin on Deeds, §§ 836, 837. Applying this rule, it is apparent that the intent of the parties to the deed of September 13, 1873, will be most nearly carried out by holding that Elizabeth should take a life estate, with remainder in fee simple to the plaintiffs, 'the heirs of her body.'"

Those observations manifestly apply with equal force to the construction of a will, the paramount purpose in each instance being to arrive at the true intent of the maker of the instrument.

The court below, in its opinion in the present case, reaffirmed the decision in the Heen Case, saying:

"We reaffirm the ruling made in that case, that in this jurisdiction, when a futile attempt has been made to create an estate in fee tail, it will take effect either as a fee-simple or a life estate and remainder, according to which appears to more nearly effect the intention of the grantor or testator, and hold, further, that ordinarily it will be held to take effect as a fee simple unless something appears which should send it the other way. Whether the court could go beyond the language of the will and consider the extrinsic testimony as to surrounding circumstances need not be decided, as, in our opinion, the testimony referred to in this connection throws no light on the subject. What the testatrix might have done had she been advised that she could not create an estate tail is left to conjecture. There is nothing tending to show a preference for a life estate and remainder."

And the court concluded its opinion as follows:

"We take the view that where it does not appear that in the particular case a life estate and remainder would more nearly comply with the ultimate disposition of the property and the direct benefits to be conferred thereby which the grantor or testator had in mind, the attempted fee tail should take effect as a fee simple in the first taker. This, because both are estates of inheritance and belong to the same genus; both, at common law, were subject to the incidents of dower and curtesy, and were without impeachment of waste; the tenant in tail could bar the entail; an estate tail, in point of law, bears little resemblance to a life estate and remainder, and the law generally favors the first taker. In short, in such a case as this, a holding that the first taker shall have an estate in fee simple will go as near as may be under the law toward effectuating the futile intent to create an estate tail."

If, as the defendant in error contends and the court below held, the devise should be construed as a fee-simple grant to Kahakuakoi and Kealohapauole, and passed to the defendant in error by virtue of the mortgage thereof by them to Bishop & Co. and the foreclosure proceedings and subsequent mesne conveyances that have been referred to, it is perfectly obvious that, had there been default of issue of Kahakuakoi and Kealohapauole or either of them, it would have been impossible for the land to have passed to the trustees of the testatrix upon the trusts expressed in her will, as the testatrix in express terms declared it should. I do not think it possible that such construction of the devise can be sound, for it clearly violates the express limitation imposed by the testatrix on her devise to Kahakuakoi and Kealohapauole. So far from giving the land to them in fee, the bequest was to them, *and to the heirs of the body of either* of them, coupled with the express declaration that *upon default of such issue the land should go to the trustees named by the testatrix upon the trusts expressed in her will.*

Surely, to hold, as I do, that the devise should be so construed as to give to Kahakuakoi and Kealohapauole a life estate in the property, with the remainder to the heirs of the body of either of them, in default of which, then to the trustees named in the will upon the trusts therein declared, would more nearly comply with the true intent of the testatrix than to give to it the effect of passing the fee simple title to the first takers of the devised interest. Indeed, as above said, I think the latter view in clear violation of the express limitation imposed by the testatrix on her devise to Kahakuakoi and Kea-

lohapauole, whereas the former is in substantial accord with the true meaning of the express language of the will.

I think the judgment should be reversed and the cause remanded, with directions to the court below to vacate the judgment of the trial court, and for further proceedings therein in accordance with the views here expressed.