### EWA PLANTATION CO. v. WILDER, Tax Assessor.

(Circuit Court of Appeals, Ninth Circuit. May 28, 1923.)

No. 3876.

1. **Taxation** &#9758;382—**Strike claim settlement held income of the year in which received, though paying for loss to crops maturing in subsequent years.**

Where, to combat a strike of sugar plantation laborers on one island, the Hawaiian Sugar Planters' Association agreed with the sugar plantations on that island to make good their strike losses, and accordingly paid a sugar plantation company, as strike loss to its crops maturing in 1920, 1921, and 1922, sums for each year's loss, *held*, that although, under Rev. Laws Hawaii 1915, § 1307, the amount expended in producing a crop is deductible from income as an expense only in the year in which the crop is harvested and marketed, yet the amount of the strike loss received for damages to the 1921 and 1922 crops should be included in the 1920 income tax returns and could not be carried into the years 1921 and 1922, respectively, as income for those years.

2. **Taxation** &#9758;98—**Interest from notes and bonds and deposits of Hawaiian sugar plantation held by agent in California is taxable as income from property.**

Where bonds and notes of corporations and deposits of money owned by a Hawaiian sugar plantation company were held by its agent in California, income therefrom was taxable under Rev. Laws Hawaii 1915, § 1306, under the rule of mobilia sequuntur personam, especially as under California laws the securities had not acquired a business situs there for the purpose of local taxation.

3. **Courts** &#9758;405(3)—**Construction by the territorial court of its decisions held determination of law of territory.**

The construction in any case by the Supreme Court of the territory of Hawaii of the meaning of prior decisions of that court is a determination of the law of the territory which must be accepted by the appellate court in such case.

4. **Taxation** &#9758;98—**Situs of personalty follows domicile of owner.**

Generally, the situs of personal property follows the domicile of its owner, but for purposes of taxation personal property may by statute be

separated from the owner and taxed at the place where it is actually located.

**5. Statutes ☞219—Practical construction of tax statute by tax assessors is resorted to only in case of ambiguity.**

The practical construction which has been placed on a tax statute by tax assessors is to be resorted to as an aid to construction only in doubtful cases.

**6. Courts ☞405(3)—Appellate courts will not disturb construction of statute by territorial Supreme Court except for clear error.**

In all cases involving the construction of local territorial statutes, an appellate court must lean toward the interpretation adopted by the Supreme Court of the territory and will not disturb its decision unless there is clear error.

In Error to the Supreme Court of the Territory of Hawaii.

Action by Charles T. Wilder, as Tax Assessor for the First Taxation Division, Territory of Hawaii, against the Ewa Plantation Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robertson & Castle, A. G. M. Robertson, Frear, Prosser, Anderson & Marx, W. F. Frear, Smith, Warren, Stanley & Vitousek, L. J. Warren and Henry Holmes, all of Honolulu, Hawaii, for plaintiff in error.

John Albert Matthewman, Atty. Gen. (Marguerite K. Ashford, of Honolulu, Hawaii, of counsel), for defendant in error.

Before GILBERT and RUDKIN, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. This cause was tried in the Supreme Court of the Territory of Hawaii upon an agreed statement of facts, a procedure authorized by the laws of the territory. It concerns the annual income tax of the plaintiff in error, the Ewa Plantation Company, for the year 1920. One of the items of the income tax return was the "strike claim settlement" of $2,324,931.75. To that item the assessor added $466,765.97. The item grew out of a strike of the Philippino and Japanese laborers employed on the sugar plantations of the island of Oahu in the year 1920. The Hawaiian Sugar Planters' Association, composed of practically all of the sugar producing concerns in the territory, entered into an agreement with the sugar plantations on the island of Oahu by which the former agreed to reimburse the latter for all loss sustained by them by reason of the strike, if they would resist the demands of the strikers. At the conclusion of the strike, it was ascertained that by reason thereof the losses of the plantations were $12,119,317.30. Of this sum, each plantation paid its pro rata. The plaintiff in error paid $721,818.95, and it received as its strike loss from the sugar planters' association $2,791,697.72, the same being apportioned as follows: For the crop of 1920, $2,324,921.75; for the crop of 1921, $133,706.29; and for the crop of 1922, $333,059.68. In its income tax return for the year 1920, the plaintiff in error deducted the sum which it had contributed as its pro rata to the sugar planters' association and also deducted the sums which were allowed for damage to the crops of 1921 and 1922,

amounting to $466,765.97, contending that the amounts so received on account of taxable profits on the crops of 1921 and 1922 should be reserved for its returns of income for those years and should not be included in the income return for 1920. The Supreme Court of the territory held against this contention and sustained the ruling of the assessor that, since the losses allowed for the years 1921 and 1922 were received in the year 1920, they should be returned as income accruing during that year.

[1] The contention of the plaintiff in error is based upon decisions of the Supreme Court of the territory construing the taxation laws of Hawaii. It appears that on a sugar plantation, while a crop of cane is harvested every year, there are each year three crops growing and maturing, one newly planted, one one-half grown, and one ready for harvest, and that the harvest requires from seven to ten months. It was for the loss and damages for these three crops to mature in 1920, 1921, and 1922 that the payments were made by the sugar planters' association. It is admitted that it had been the practice of the sugar plantations to make their tax returns of income from the sale of sugar upon what was termed the crop basis rather than an annual basis, and that instead of deducting disbursements for operating and other expenses during the year, the sugar growers deducted the amounts expended or to be expended in the production and marketing of the crop harvested during the taxation period from the proceeds of sales, and the gross income was returned on the basis of the current crop and not on receipts from sales during the taxation period, and the deductible cost of producing the crop included all the cost of producing it, notwithstanding that the greater part of that cost was incurred in the preceding two years. This was in accordance with the accepted construction of section 1307 of the Revised Laws of Hawaii 1915, which provides:

"In estimating the gains, profits and income of any person or corporation, there shall be included * * * the amount of sales of all movable property, less the amount expended in the purchase or production of the same."

In the case of Tax Assessor v. Laupahoehoe Sug. Co., 18 Haw. 206, tax returns had been made on the crop basis. The assessor claimed that the taxable income should be computed by deducting from the receipts during the year the total amounts expended during the year. The court held otherwise, ruling that the taxpayer's returns in question had been made in exact accordance with the statute of 1915. The court said:

"Even if, as claimed by the assessor, a portion of the cost of production was incurred prior to the six months' taxation period and has already been deducted from the income of the taxpayers during the preceding taxation periods, that does not take away the right of the taxpayers to make their returns and compute their incomes as the statute directs."

In Re Income Tax Appeal Cases, 18 Haw. 596, the court affirmed the decision in the Laupahoehoe Case and held that a sum expended in 1906 for clearing land for a crop which was harvested in 1908 would not be deductible until 1908. The plaintiff in error relies upon these decisions as establishing a principle which it claims should be

applied in the present case, the principle that the amounts expended in producing a crop of sugar cane are to be deducted only in the year when the crop is harvested, and that until a crop is harvested and marketed, the profit thereon, if any, cannot be known, and it argues, referring to the damages done to the crops of 1921 and 1922 during the strike, that until each crop had matured and been marketed, it could not be known whether or not there was profit or loss, that is to say, it could not be known in 1920 whether the sum so received for damages to the crops of 1921 and 1922 were merely return of capital or partly a return of capital and partly a return of profit, and that the money so received for those years should not be included in income tax returns until the crops to which they related should be harvested and sold.

We agree with the Supreme Court of the territory that the proper construction of the statute does not justify the contention of the plaintiff in error. The statute plainly provides that the return of the taxpayer shall include all "gains, profits, and income, derived from any source whatsoever during said taxation period." Rev. Laws Hawaii 1915, § 1307. The inference is not deducible from the decisions of the Supreme Court of Hawaii that income actually received in one year is not taxable as income of that year but is to be carried into the income of another year. What was the nature of the payment which in the year 1920 the plaintiff in error received from the sugar planters' association? Obviously it was not a payment for movable property which the plaintiff in error had sold or expected to sell. Nor was it reimbursement for money expended in the production of crops. It can only be regarded as compensation or liquidated damages for losses sustained by reason of the strike. It was in no proper sense a return to the plaintiff in error of amounts expended by it in the production of crops of sugar cane. Apparently the plaintiff in error itself recognized this view of the nature of the payment, for in deducting its expenses for the year 1920 it deducted the entire amount of its pro rata share of contribution to the sugar planters' association, instead of leaving it to be charged proportionately to each of the three annual crops. The case is in principle not unlike Maryland Casualty Co. v. United States, 251 U. S. 342, 40 Sup. Ct. 155, 64 L. Ed. 297, in which the court construed the Income Tax Act of 1913 (38 Stat. 114), and held that premiums collected in any year by the agents of an insurance company, but not paid over to the treasurer of the company, are to be reckoned as income received in that year. The court said, and it is applicable to the case at bar:

"Only imperative language in the statute would justify a construction which would place it in the power of the claimant, by private contract with its agents, to shift payment of taxes from one taxing year into another."

[2] A second cause of action so submitted to the territorial Supreme Court involved the question whether certain items of interest received by the plaintiff in error during the year 1920 on bonds and notes of corporations and deposits which it owned, and which were held in banks in the state of California, were legally deductible from its tax return of income of 1920. Castle & Cooke, a Hawaiian corporation,

had for many years been the general agent at Honolulu of the plaintiff in error. Welch & Co., a California corporation, had been the agent at San Francisco of Castle & Cooke. The sugar produced by the plaintiff in error had been sold in the States and had been received by Welch & Co., and by it deposited in California banks and credited on its books to Castle & Cooke for account of the plaintiff in error. Against such credit, the plaintiff in error had drawn moneys required by it for the payment of expenses on its plantation and the dividends upon its stock. The notes and bonds above referred to were purchased by and remained on deposit with Welch & Co. for the plaintiff in error. Neither said bonds or notes nor the money with which they were purchased were held in the territory or were physically present there at any time. The plaintiff in error in its return for the year 1920 deducted the interest accruing to it from these investments during that year. The tax assessor disallowed the deduction. Section 1306, Revised Laws of 1915, provides for the levy, assessment, and collection, of annual taxes on corporation income as follows:

"A tax of two per cent. on the net profit or income above actual operating and business expenses derived during each taxation period, from all property owned, and every business, trade, employment or vocation, carried on in the territory of Hawaii."

The plaintiff in error contended that the statute should be regarded as if it read, "There shall be levied a tax on the income from all property owned within the territory of Hawaii," and that although the bonds, notes, and bank deposits so referred to were property belonging to the plaintiff in error, they were not within the meaning of the statute, property owned in Hawaii. The court below ruled against this contention, applied the maxim, "mobilia sequuntur personam," and held that the income thus derived from notes and bonds was taxable at the domicile of the taxpayer.

[3] The plaintiff in error insists that the language of the statute indicates an intention to place residents and nonresidents on the same plane, and to tax only the income of property actually within the territory, and that the statute should be read in the light of the practical construction which for many years has been placed upon it by those who were charged with the duty of administering it, that the maxim, "Mobilia sequuntur personam," has been repudiated by the Hawaiian courts, and that any doubt as to the taxability of the items of income here in question should be resolved in favor of the taxpayer. The decisions in Hawaii so referred to as indicating the rejection of the maxim, "Mobilia sequuntur personam," are H. H. Hackfeld & Co. v. Minister of Finance, 3 Haw. 292; Hackfeld v. Luce, 4 Haw. 172; and Estate of Hall, 19 Haw. 531. It is true that in the case first cited the court incidentally said:

"The legal fiction which makes the situs of personal property wherever the owner is, with all the unjust consequences which would follow, cannot become fact, as applicable to taxation, except by legislative enactment."

This observation was unnecessary to the decision of the case, and, considering what was actually decided in the three cases so cited, we are not persuaded that they go farther than to hold, as it is generally

held, that the maxim is not of universal application and that it may yield to the exigencies of particular circumstances. To this it is to be added that in the case at bar the Supreme Court of the territory has interpreted those decisions and has found that they are not out of harmony with certain decisions of the Supreme Court of the United States which were held to control decision of the present case on its merits. Such construction by the territorial court of the meaning of the decisions so cited is, upon authorities hereafter to be referred to, a determination of the law of the territory which must be accepted by an appellate court.

[4] It is a general rule of law that the situs of personal property follows the domicile of its owner. Taylor v. Secor, 92 U. S. 575, 23 L. Ed. 663. But for purposes of taxation personal property may by statute be separated from the owner and taxed at the place where it is actually located. Tappan v. Merchants' National Bank, 19 Wall. 490, 22 L. Ed. 189; New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701. The plaintiff in error contends that the bonds, notes, and deposits here in question have become localized and have acquired a business situs in San Francisco, and they cite cases in which foreign held bonds have been taxed at the place of their situs irrespective of the owner's domicile. The general doctrine of those cases is expressed in De Ganay v. Lederer, 250 U. S. 376, 39 Sup. Ct. 524, 63 L. Ed. 1042. In that case stocks and bonds issued by Pennsylvania corporations, and mortgages on real estate in Pennsylvania, were owned by an alien nonresident but were in the hands of an agent, a Pennsylvania corporation, authorized to sell, assign, and transfer them and to invest and reinvest the proceeds as it might deem best under a power of attorney to represent the owner and in the owner's behalf to vote and act at all meetings of corporations connected with such stocks and bonds. It was held that the income derived from the stocks and bonds was subject to taxation under the Income Tax Law of 1913. The court said:

"We have no doubt that the securities, herein involved, are property. Are they property within the United States? It is insisted that the maxim mobilia sequuntur personam applies in this instance, and that the situs of the property was at the domicile of the owner in France. But this court has frequently declared that the maxim, a fiction at most, must yield to the facts and circumstances of cases which require it; and that notes, bonds, and mortgages may acquire a situs at a place other than the domicile of the owner, and be there reached by the taxing authority."

In that case the significant facts were that the stocks and bonds were in the hands of a local agent empowered to sell and dispose of them or any of them according to his own judgment, to reinvest at his discretion, to hold the same for the owner's account, and to represent the owner and manage generally the owner's business affairs. In the case at bar there was no such localization of the property. The agent at San Francisco had authority only to purchase and hold the securities and to place the income on deposit, to be drawn upon, not by Castle & Cooke at Honolulu, but by the plaintiff in error at its domicile, as required for the payment of the current ex-

penses of its plantation and dividends upon its stock. We are of opinion that the court below properly ruled in accordance with the decision in Maguire v. Trefry, 253 U. S. 12, 40 Sup. Ct. 417, 64 L. Ed. 739. In that case, a citizen of Massachusetts was the beneficiary of a trust whereby she was to receive income from securities located at Philadelphia. It was held that the income was taxable in the state of the beneficiary's domicile. Referring to its prior decisions in which the right to tax such income at the place of the situs of the securities from which it was derived had been sustained, the court distinguished them by observing that they all rested upon the principle that such instruments are more than mere evidences of debt. "In the present case," said the court, "we are not dealing with the right to tax securities which have acquired a local situs, but are concerned with the right of the state to tax the beneficiary of a trust at her residence, although the trust itself may be created and administered under the laws of another state." The court reached its conclusion notwithstanding the fact that the legal title to the property was vested in the trustee in Pennsylvania. In the present case, the legal title to the property is not held in San Francisco, but is in the taxpayer in Hawaii. Nor had the securities so located in San Francisco acquired under the law of California a business situs there for purposes of local taxation; for they were not in the possession and control of a local agent holding them "for the purpose of transacting a permanent business" or of investing and reinvesting the proceeds from principal or interest so as to come "in competition with the capital of the citizens" of California. Mackay v. San Francisco, 128 Cal. 678, 61 Pac. 382; Westinghouse Electric & Mfg. Co. v. Los Angeles County (Cal. Sup.) 205 Pac. 1076. And in California the rule is recognized that debts attend the person of the creditor and are taxable at his domicile. In re Fair's Estate, 128 Cal. 607, 61 Pac. 607. See, also, Citizens' National Bank v. Durr, 257 U. S. 99, 42 Sup. Ct. 15, 66 L. Ed. 149.

[5] As to the contention that the court should have followed the practical construction which for many years had been placed upon the law by the tax assessors, it is sufficient to say that such construction by officials is to be resorted to only in aid of interpretation in ambiguous and doubtful cases. It must always yield when, as here, the meaning of the law is plainly expressed. There can be no question but that the bonds and notes in the bank in California were owned in the territory of Hawaii, and are within the terms of the statute. In Vicksburg, etc., Railroad Co. v. Dennis, 116 U. S. 665, 6 Sup. Ct. 625, 29 L. Ed. 770, it was held that the omission of taxing officers in previous years to assess certain property cannot control the duty imposed by law upon their successors, or the legal construction of the statute under which exemption from taxation is claimed.

[6] Another consideration which we consider a conclusive reason for affirming the judgment is that in all cases involving the construction of local territorial statutes, an appellate court must lean toward the interpretation adopted by the Supreme Court of the territory, and will not disturb its decision unless there is clear error. Cardona v. Quinones, 240 U. S. 83, 36 Sup. Ct. 346, 60 L. Ed. 538; Lewers &

Cooke v. Atcherly, 222 U. S. 285, 34 Sup. Ct. 94, 56 L. Ed. 202; Kealoha v. Castle, 210 U. S. 149, 28 Sup. Ct. 684, 52 L. Ed. 998. The rule so established has been followed by this court in Kinney v. Oahu Sugar Co., 255 Fed. 732, 167 C. C. A. 78; Castle v. Castle (C. C. A.) 281 Fed. 609; Territory of Hawaii v. Hutchinson Sugar P. Co. (C. C. A.) 272 Fed. 856; and In re Bishop's Estate, 250 Fed. 145, 162 C. C. A. 281.

The judgment is affirmed.