# RE TAXES THE BANK OF HAWAII, LIMITED.

## No. 1582.

### SUBMISSION UPON AGREED FACTS.

SUBMITTED JANUARY 27, 1925.                    DECIDED, FEBRUARY 3, 1925.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

TAXATION—*moneys deposited in banks by the Territory.*
    Under the statutes existing on January 1, 1923, moneys deposited by the Territory in banks were not exempt from taxation.

OPINION OF THE COURT BY PERRY, J.

Under Act 123, L. 1909, as amended by Act 131, L. 1911, appearing in the Revised Laws of 1915 as chapter 87, it was provided (Sec. 1165) that "not more than seventy-five per cent. of any moneys in the territorial treasury belonging to the Territory, may be deposited by the treasurer of the Territory to the credit of the Territory in such national bank or banks, or in such banks doing business under the laws of the Territory as the treasurer, with the approval of the governor, may select, and any sum so deposited shall be deemed to be in the territorial treasury." Additional provisions in the same chapter relate to the furnishing of security by the banks for the moneys so deposited and to the payment of interest on all deposits at a rate of not less than two per cent. nor more than three per cent. per annum, prohibit the deposit in any one bank of more than fifty per cent. of the aggregate amount of moneys of the Territory available for deposit, and require that the expenses of transportation of the money so deposited be borne by the depositaries and that all deposits of money with the interest thereon shall be paid upon demand on checks signed by the treasurer and countersigned by the auditor

or by the payment of certificates of deposit issued by the depositary, which certificates are to be indorsed by the payee named therein as well as by the auditor. By a statutory submission to this court the following facts are agreed upon by the parties to this case: that on May 1, 1911, an agreement was entered into by the territorial treasurer with The Bank of Hawaii, Limited, the present plaintiff, for the deposit of territorial moneys in said bank; that security thereunder was furnished by the bank in accordance with law; "that from time to time subsequent to the passage of Act 123 of the Session Laws of 1909, and under the authority of said Act and the amendments thereto, the treasurer of the Territory of Hawaii deposited various amounts of moneys belonging to the said Territory with said bank; that such territorial deposits were and are received, commingled and used in exactly the same manner as were and are the deposits of private parties; that upon the first day of January of each year thereafter there were always balances on deposit in said bank to the credit of the said Territory and that upon the 1st day of January, 1923, the balance of deposits in said bank to the credit of the said Territory totaled the sum of $1,017,353.33; that upon the first day of January of each year subsequent to January 1, 1909, the said bank had in its possession various amounts of cash, being a part of all money theretofore deposited with it by all of its depositors including the Territory of Hawaii and the City and County of Honolulu; and that on the 1st day of January, 1923, it had in its possession the sum of $774,075.00 in cash, which sum was a part of all moneys deposited with it as general and special deposits by all its customers, including the Territory of Hawaii and the City and County of Honolulu;" that on January 13, 1910, C. R. Hemenway, the attorney general, rendered to the treasurer of the Territory a written opinion,

confessing that "the question presented is one of statutory construction and is by no means clear," advising that the moneys deposited by the Territory with banks under the Act in question "should not be considered as taxable in the hands of the depositaries" and suggesting "that it might be wise to secure a judicial determination of this question in the usual way;" that on March 25, 1919, Harry Irwin, attorney general, rendered to the treasurer a written opinion that "territorial banks, acting as depositories of territorial, county or city and county funds, under the provisions of chapters 87 and 127, may legally deduct the amount of such deposits from their cash in hand in making returns for taxation purposes;" that no judicial determination of the question involved was ever sought or had and that acting in pursuance of the advice of those two attorneys general the tax assessor did not tax the moneys on hand in the plaintiff bank on the assessment dates prior to January 1, 1922, "except only when and in so far as the same were in excess of all deposits then standing to the credit of the Territory;" that for assessment purposes for the year 1922 the treasurer of the Territory informed the plaintiff bank "that he was not in accord with the two opinions of the attorneys-general * * * that he * * * did not believe that Act 123 as aforesaid had the effect of exempting, in whole, territorial deposits in said bank from taxation" and suggested that "a fair and equitable interpretation and adjustment would be for the said bank to deduct from its total cash on hand an amount which bears the same ratio to the total amount of its cash on hand as is borne by the amount of territorial deposits to the total amount of all deposits of the commercial branch of the bank on that date and pay taxes on the balance of its cash on hand;" that the said treasurer "proposed that the said bank after the 1st of January,

1922, pay taxes on its cash on hand on said basis" and that to this proposal said bank agreed; that the plaintiff bank paid taxes on its cash on hand on January 1, 1922, on the basis of the "adjustment" suggested by the treasurer and that on January 1, 1922, the territorial deposits in the bank exceeded the amount of the cash on hand in the bank on that date; that on December 29, 1922, the territorial treasurer was advised by J. A. Matthewman, attorney general, that depositaries of territorial moneys under the Act in question "are liable for taxation on all moneys on hand on the first day of January of each year, regardless of the amount of deposits to the credit of the Territory in said banks on the taxation dates;" and that the sum of $23,740.88 is the amount of the tax properly chargeable against the sum of $774,075, being cash on hand in the plaintiff bank on January 1, 1923, if the whole of the said sum is taxable under the tax statutes. In the formal submission the plaintiff claims "that it had no moneys on hand on the 1st day of January, 1923, which were liable to taxation inasmuch as the moneys of the Territory then deposited with it exceeded the aggregate amount of all moneys in its possession on said January 1, 1923." The defendant assessor claims that the plaintiff "is liable for taxation on all moneys it had on hand on January 1st, 1923, namely, the sum of $774,075.00, regardless of the fact that on said January 1st, 1923, there was deposited with said bank to the credit of the said Territory the said sum of $1,017,353.33." The parties agree that "judgment, either that The Bank of Hawaii, Limited, aforesaid, pay no tax upon the said sum of $774,075.00, or that The Bank of Hawaii, Limited, aforesaid, pay the assessment of $23,740.88 aforesaid upon the said sum of $774,075, together with interest, may be entered herein by the court, in accordance with the views of the court upon the facts" agreed upon.

Upon the agreed facts there can be no doubt that, aside from any statutory provision to the contrary, the moneys deposited with the plaintiff became upon their deposit the property of the plaintiff and that the relation of debtor and creditor thereupon existed between the plaintiff and the Territory.  This is not disputed in the case at bar.  Is there sufficient in section 1165, R. L. 1915, to take these deposits out of the ordinary rule? We think that there is not.  It is true that, under section 1246, R. L. 1915, "real and personal property belonging to the Territory" and/or "any county or city and county" are expressly exempted from taxation but that provision does not throw light upon the question as to the effect of the transactions between the Territory and the plaintiff bank with reference to the deposits.  Section 1165 is a part of chapter 87 entitled "Deposit of money in banks" and that chapter is a part of title XIII entitled "Treasury."  The statement that the deposits authorized to be made by section 1165 "shall be deemed to be in the territorial treasury," was, in our opinion, intended by the legislature merely by way of authorization to the treasurer as to the method of keeping the territorial books of account and by way of exempting him from any liability that might otherwise rest upon him for not having these territorial moneys actually on deposit in the territorial treasury,—the same purpose being evidenced by the provision of section 1171 (a part of the same chapter) that all certificates of deposit or receipts received by the treasurer from the depositaries as evidence of the deposits "shall be deemed and counted as cash."  This statutory fiction was plainly not intended as a fiction for all purposes; for example, if any of the depositaries should at any time refuse or fail to repay to the Territory on demand the moneys deposited, the fiction that the money was to be deemed to be in the territorial treasury would certainly

not be permitted to constitute a defense to an action brought for the recovery of the moneys. The *fact*, as distinguished from the *fiction*, would be provable and would be evidence tending to sustain the action and the moneys would be recoverable. There is no indication either in section 1165 or elsewhere in the statutes that it was intended by the provision under consideration to modify or render inapplicable the provisions of the statutes imposing taxes upon all moneys in the possession of banks on the assessment dates. Had it been intended to modify, repeal or render inapplicable the tax statutes, it would have been a very simple matter to have so worded section 1165 or some other section as to express that intent. Nor is any intent discernible in the language of the statute to resort to any method of apportionment such as that adopted by one of the treasurers. Section 1165 does not prescribe any standard of apportionment or method of segregation of the part of the moneys on hand to be taxed from the part to be exempt. The court cannot prescribe such standard or ratio.

As to the contemporaneous construction claimed for the opinions of the attorneys general, it will suffice to say that those opinions were neither continuous nor uniform. Moreover, the language of the statute is not ambiguous and is not such as to justify a resort to practical, contemporaneous construction. See, for example, *Ewa Plantation* v. *Wilder*, 26 Haw. 299, 316, and the same case in 289 Fed. 664, 670.

Judgment will be entered to the effect that the plaintiff pay to the Territory the sum of $23,740.88 as taxes on the sum of $774,075, together with interest.

*Smith, Warren, Stanley & Vitousek* for the taxpayer.

*H. R. Hewitt,* First Deputy Attorney General, for the assessor.